53 N.J. Super. 252 (1958)
147 A.2d 67
RAIN OR SHINE BOX LUNCH CO., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOARD OF ADJUSTMENT OF THE CITY OF NEWARK AND NORMAN J. MULLER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1958.
December 16, 1958.
*254 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Joseph A. Ward argued the cause for defendants-appellants (Mr. Vincent P. Torppey, Corporation Counsel, attorney).
Mr. Irving Mandelbaum argued the cause for plaintiff-respondent.
*255 The opinion of the court was delivered by CONFORD, J.A.D.
The Law Division entered judgment setting aside the denial of an application for a variance from the zoning ordinance of the City of Newark by the board of adjustment of that municipality and directing that the appropriate officers of the city issue a permit authorizing the construction upon and use of the land in question as a "parking station" in connection with the operation of plaintiff's business. The defendants, board of adjustment and zoning enforcement officer of the city, respectively, appeal.
The plaintiff operates a catering business from premises at 501-509 Broadway in the City of Newark. It prepares food for consumption off the premises, delivering its product by truck. Its building, situated on Broadway, with a frontage of about 125 feet, is owned by a corporation of related proprietorship which also owns the lots on Oraton Street and Chester Avenue which are the subject of this controversy. The building fronting on Broadway contains offices, facilities for preparation of food products and a garage used by plaintiff for storing its trucks, which number about 50. Plaintiff also has an auxiliary garage for trucks on the nearby corner of Broadway and Chester Avenue. An entrance into the main building by ramp from Broadway serves both for ingress and egress of plaintiff's trucks and for the vehicles of suppliers to plaintiff of materials essential to its business. This building is in a "second business" district, and plaintiff's operation apparently conforms thereto. A use map in evidence shows, however, that half or more of the Broadway frontage on both sides of the street in the near vicinity of plaintiff's plant is devoted to residential uses, although a witness for plaintiff made a general statement to the contrary.
Abutting a part of the rear line of plaintiff's building is an L-shaped tract of vacant land owned by plaintiff's related holding company, having a frontage of 150 feet on Oraton Street (running parallel with Broadway) and 25 feet on Chester Avenue. Chester Avenue intersects both Broadway and Oraton Street. This rear tract, for which a zoning *256 variance was sought by plaintiff, is in a "third residential" district, in which commercial parking is not a permitted use. There were two residences on the property when the plaintiff interests acquired it, but these were later torn down.
The formal application for a variance for the Oraton Street-Chester Avenue tract requested a permit for the "establishment of a truck parking station including parking of visitors and employees automobiles" (sic). The plaintiff's proofs and the explanation of its counsel before the board made it clear, however, that the tract was also intended to be used as an alternative or supplementary means of access for trucks to the Broadway building, in order to relieve the functional inadequacy of the Broadway ramp entrance, a situation which has been causing the backing up and double parking of its trucks along Broadway while awaiting loading or unloading in the building.
There is evidence indicative of the fact that Broadway, Oraton Street and Chester Avenue, in the vicinity of plaintiff's plant, have substantial daytime parking congestion. Broadway is a two-way county thoroughfare with considerable traffic. Oraton Street is a one-way street, the traffic running into Chester Avenue. The use map aforementioned indicates that Oraton Street on both sides is almost entirely residential in the block where the locus in quo is situated. This is also true of the side of Chester Avenue on which lies the frontage presently involved, as well as both sides of Chester Avenue south of the line of Oraton Street projected into the intersection with Chester Avenue. There is an auto repair shop, however, on the easterly side of Chester Avenue, near Oraton Street.
Before the board of adjustment the emphasis of plaintiff's case was placed upon a need for off-street parking space for its employees who drive to work (stated by one witness to number 60 and by another, 35) and business visitors. An attempt was made to show the public benefit which would accrue from taking these vehicles off the streets where they now park. However, plaintiff's food processing operations *257 commence at midnight and deliveries go out in the early morning. Operations close down at 2:00 P.M. It is not clear from the proofs to what extent neighborhood parking congestion concurs with the hours of plaintiff's operation. It may be inferred, however, that a moderate degree of neighborhood parking relief would result from the availability of the 30- to 36-car capacity which plaintiff's officer testified the rear lot would afford if the variance were granted, subject, however, to such parking of trucks on the lot and use of the area for truck ingress and egress to and from the building as was referred to above.
A written report was submitted to the board in connection with this matter by Edward L. Cyr, City of Newark engineer in charge of the bureau of traffic and signals. This recites, in part:
"A need for off-street parking is great in this area and the establishment of the proposed parking area will greatly relieve parking, not only on Chester Avenue and Oraton Street, but also on Broadway as well.
In my opinion the approval of this area for a parking lot should not increase the traffic hazards in this area provided the proposed driveway on Chester Avenue is eliminated. * * *"
Some question of plaintiff's sincerity in professing the motive of parking relief for its employees and the city in general may be raised by the fact that in recent years it has made a number of applications for a variance to erect an addition to its building on the lot in question, all of which were denied.
Certain property owners and residents in the vicinity of Oraton Street and Chester Avenue, unrepresented by counsel (although one of them is a lawyer), testified informally as to their reasons for objecting to the variance. In summary, their objections were as follows: There is a great deal of noise and odor emanating from plaintiff's establishment now, to the extent that it is often difficult to sleep nights (particularly during the summer), and if plaintiff is permitted to park or load trucks in the now vacant lot, the condition will be even worse. One complained of the noise *258 of the trucks as they left the Chester Avenue garage in the early morning. There were also contentions that the variance would result in a devaluation of surrounding properties and that the entrance of trucks into the lot from Chester Avenue would create a hazard to the school children who use that street. In answer to the questions of plaintiff's attorney whether a paved, shrubbed lot would not add to the attractiveness of the corner, two objectors complained that it was plaintiff who had made the area unattractive by demolishing the buildings that had formerly stood there.
The board voted to deny the variance on the stated grounds:
"* * * it being determined and adjudged that the application of appeal be denied because after having inspected the premises and the surrounding neighborhood and heard the testimony given at the hearing, the Board decided that, (1) the application would depreciate property values and be detrimental to the public health, safety and welfare; (2) the applicant had not proven a hardship; (3) the proposed use would adversely affect the intent and purpose of the Zoning Ordinance and the Master Plan.
And the proposed use, with due consideration of conditions and surroundings, would be inimical to the public safety and general welfare if located on said premises, and is not reasonably necessary for the convenience of the community; and that relief could not be granted without substantial detriment to the public good and that the use would substantially impair the intent and purpose of the Zone Plan and the Zoning Ordinance."
This ruling was challenged by the present action in lieu of prerogative writs. On the record of the proceedings before the board the Law Division held that there was no evidence to substantiate any of the points upon which the variance was refused and that the denial was therefore "arbitrary and capricious."
It must be noted at the outset of our consideration of the merits of the appeal that the board of adjustment had no statutory jurisdiction to grant the requested variance, but only to recommend one to the governing body, since the use requested was prohibited by the zoning ordinance in a third residential zone. N.J.S.A. 40:55-39. Even were such action warranted on the merits, the most that the Law Division could have properly done would have been to direct *259 the board to make the recommendation. Cf. Cummins v. Board of Adjustment of Leonia, 39 N.J. Super. 452, 457 (App. Div. 1956), certification denied 21 N.J. 550 (1956). The matter was handled before the board as though it came within paragraph (c) of the cited section rather than, as it properly does, under paragraph (d). The latter provides that the board may "in particular cases and for special reasons" recommend the grant of a variance to allow a structure or use in a district restricted against it, which recommendation may be approved or disapproved by resolution of the governing body. In such a proceeding the board is guided by the same general zoning standards as are fixed for zoning ordinances in R.S. 40:55-32, Ward v. Scott, 11 N.J. 117, 125, 126 (1952), subject to the supervening omnibus condition stated at the end of section 39, applicable to any action by such a board under that section, that the relief shall not be granted unless it will be "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
In exercising its administrative function under the cited statutory section the local board of adjustment weighs the evidence before it against the zoning standards and desiderata specified in the statute, makes findings of fact grounded in the evidence and keyed to the standards specified, and arrives at a conclusion as to whether or not, on balance, the evidence and the zoning factors implicated justify the requested recommendation of variance and whether such a variance will offend the omnibus condition in section 39 quoted above. Ward v. Scott, supra (11 N.J. at page 117); Ward v. Scott, 16 N.J. 16 (1954); Moriarty v. Pozner, 21 N.J. 199 (1956); Dolan v. DeCapua, 16 N.J. 599 (1954); Izenberg v. Board of Adjustment of City of Paterson, 35 N.J. Super. 583 (App. Div. 1955).
In the matter before us, as is often the case, the board had to deal with conflicting zoning considerations in performing its function. The tract in question is in a district not only zoned residential but predominantly devoted to such *260 use. The conversion of any parcel of land in such an area to a commercial use presumably impairs the residential character of the area as a whole. The potential harm is not to be gauged by comparing the size of the parcel in question with the entirety of the residential area, since the process of deterioration of a residential district may be incepted by isolated discordancies in use. Nor does the fact that there may be one or a few existing nonconforming uses necessarily negate the potential disintegrative effect of the allowance of more. What we said in Cummins v. Board of Adjustment of Leonia, supra (39 N.J. Super., at pages 460, 461), in disapproving the judicial overruling of a denial of a recommendation for a variance to permit a commercial use in an adjacent residential district, under circumstances generally analogous to the present situation, is relevant in this aspect of the problem before us:
"We take particular note that the request for a variance here is not merely from a one-family residential use to a multi-family residential use  this would accord with the non-conforming properties across the street from the subject premises, and the two-family residence immediately to the west  but it is for a commercial use. Were the variance granted it would take the premises in question (located on Hillside Avenue which, except for the corner of Broad Avenue, is a residential street) and turn it into a commercial operation as an adjunct and accessory use to the commercial uses existing on Broad Avenue. Plaintiffs, who bought the premises with full knowledge of the existing zoning restriction, would thus benefit the commercial development of their property on Broad Avenue at the expense of their resident neighbors." (Emphasis ours.)
See also Marrocco v. Board of Adjustment of City of Passaic, 5 N.J. Super. 94 (App. Div. 1949), also holding that a local board's conclusion that the intrusion by variance of a business use in a residential district would substantially impair the zone plan, was not properly to be nullified as arbitrary or capricious; cf. Preye v. Board of Adjustment of North Bergen Tp., 22 N.J. Super. 161, 176 (App. Div. 1952), certification denied 11 N.J. 328 (1953).
The presumption of some degree of harm to the residential area inclusive of the parts of Oraton Street and Chester *261 Avenue in the vicinity of the locus in quo attendant upon its incorporation into plaintiff's commercial operation was given color and particularization by the objections voiced by nearby residents before the board. It is credible that the noise of cars and trucks coming and going, the opening and closing of doors, conversation, etc., during the night hours of plaintiff's operations when residents would normally be sleeping, would, over and above the possible intrinsic effect of the fact of commercial use per se, render the requested use of the property inimical to the residential character of the neighborhood, and thus justify the stated opinion of the residents and the finding of the board that the variance "would depreciate property values" and the general conclusion of the board that it would be "detrimental to the public health, safety and welfare."
Against such harm as might be deemed to flow from the variance requested it was incumbent upon the board to weigh the good, in a zoning sense, attributable thereto. Unquestionably the relief of neighborhood traffic congestion resulting from added off-street parking was a zoning factor militating in some degree in favor of the variance. Mistretta v. City of Newark, 33 N.J. Super. 205 (Law Div. 1954). But the weighing of this benefit against the harmful aspects of the variance was peculiarly a matter for the discretionary judgment of the local agency. The board apparently did not regard the parking benefit as substantial since it found that the proposed use "is not reasonably necessary for the convenience of the community." This may have been intended to mean that the 30-35 cars or trucks which could be parked on the lot (subject, moreover, to truck movements in and out of the building) would have such minimal effect on the neighborhood parking situation in entirety as not to outweigh the deleterious effect of the impairment of the residential district consequent upon the proposed commercial use of the land. The latter interpretation is, in any case, clearly attributable to the conclusions of the board that the proposed use "with due consideration of conditions and surroundings would be inimical to the public safety and *262 welfare" and to the further conclusion in the statutory language that the requested relief would be substantially detrimental to the public good and would substantially impair the zone plan and ordinance.
The judiciary will indulge the presumption that the exercise by the zoning board of its expert discretion in such a matter as this is correct and ordinarily hold that it is not to be set aside except where clearly seen to be arbitrary, capricious or patently unreasonable. Rexon v. Board of Adjustment of Borough of Haddonfield, 10 N.J. 1, 7 (1952); Ward v. Scott, supra (16 N.J. at page 21). The courts do not substitute their judgment for that of the agency entrusted by the Legislature with the administrative function. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405, 423 (1952). The public interest in the security of zoning plans created by ordinance demands that even greater self-restraint should be exercised by the courts in reviewing the denial, as compared with the grant, of variances. Cummins v. Board of Adjustment of Leonia, supra (39 N.J. Super. at page 460). Were it not for the procedural difficulties in the present case about to be mentioned, we should be impelled to conclude that the determination by the board was amply justified by the evidence before it, reverse, and direct entry of judgment for the defendants on the merits, on the basis of such generally comparable cases as Cummins v. Board of Adjustment of Leonia and Marrocco v. Board of Adjustment of Passaic, both supra.
In its findings here the board included the determination that "the applicant had not proven a hardship." Such a requirement is not a sine qua non in a paragraph (d) case. Ward v. Scott, supra (11 N.J. at pages 121, 122). We cannot be sure as to the extent to which this particular finding, in the light of the others made at the same time, contributed to the board's denial of the application. Compare Ward v. Scott, supra (16 N.J. at page 21), with Moriarty v. Pozner, supra (21 N.J. at pages 207, 208). The fair course is to remand so that the board may state for the record whether its determination to refuse to recommend *263 the variance stands in spite of its apprisal of the rule that the applicant is not necessarily required to show hardship. Moreover, the board stated that it made an inspection of the premises and the locality but did not disclose on the record of the proceedings the particular facts thus made known to it so that the parties might have an opportunity to meet the information discovered, as is the proper practice. Dolan v. DeCapua, 16 N.J. 599, 610 (1954). The findings of fact of the board in the present case, moreover, while possibly barely adequate in the light of the peculiar factual situation presented and the board's adverse conclusion in terms of the omnibus clause in section 39, cf. Marrocco v. Board of Adjustment of Passaic, supra (5 N.J. Super at page 99), might have more appropriately been stated with greater particularization. See the discussion of the facts, supra. This case, particularly in respect of the failure of the parties and the board to recognize that this was a paragraph (d) situation and to deal with it accordingly, emphasizes the great desirability, if not the absolute necessity, of the practice employed by many boards of adjustment of having the assistance of counsel familiar with zoning law and practice when such a person is not a member of the board.
The judgment is reversed and the cause is remanded for further proceedings before the board by way of supplement and amplification of the present record, to be followed by its revised findings and determination, all consonant with the procedural directions of this opinion. This court will retain jurisdiction of the appeal and will entertain an application by any party to submit further argument or briefs, or for the entry of final judgment, after the filing herein of the enlarged record to be made by the board, which filing is directed to be had within 45 days of the filing of this opinion. Costs will abide the ultimate outcome of the appeal.