79 N.J. Super. 546 (1963)
192 A.2d 305
HERMAN WOLF AND SYLVIA WOLF, PLAINTIFFS-APPELLANTS,
v.
ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF PARK RIDGE, ADOLFO DePIERO, BUILDING INSPECTOR OF THE BOROUGH OF PARK RIDGE; ALINERI HOLDING CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1963.
Decided June 25, 1963.
*548 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Walter T. Wittman argued the cause for appellants.
Mr. Harvey Smith argued the cause for respondent, Alineri Holding Co.
Mr. Aaron W. Nussman argued the cause for respondents, Zoning Board of Adjustment of the Borough of Park Ridge and Adolfo DePiero.
The opinion of the court was delivered by CONFORD, S.J.A.D.
The Law Division sustained the action of the Board of Adjustment of the Borough of Park Ridge which "reversed" the action of the building inspector in halting the paving of a parking area for a restaurant. The resolution, dated June 1, 1961, recited that at an "Executive Meeting" of the board of the same date it had been determined that a "request" to "permit the paving of the parking area" had been granted on certain specified conditions. Plaintiffs, who are neighboring property owners, appeal.
We do not propose to state all the facts appearing in or inferable from the record as the action of the board must be set aside for procedural deficiencies of a substantial nature, and a new and more complete set of facts will undoubtedly be developed on the remand to the board. Suffice it to say that defendant Alineri Holding Co., or its principals, has been operating a restaurant near the rear of a tract of land fronting on Spring Valley Road in Park Ridge almost 40 years. The tract is about 263 feet in frontage and 515 feet in depth. Until 1958 the rear portion of the property, where the restaurant building stands, was a part of the Township of Washington, while the remainder was in Park Ridge. At that time an area inclusive of the rear of the tract was annexed by Park Ridge. The original Park Ridge portion of the property has been zoned residential since the adoption of its zoning ordinance in 1923. Restaurant uses are not permitted therein.
*549 Alineri claims that it has used the front portion of the tract as a parking area for the restaurant since before 1923. Plaintiffs contend to the contrary, asserting that in 1923 the restaurant was substantially smaller than now and had a small parking area behind the building; and that very little, if any, of the land in front of the building was used for parking prior to the enlargement of the restaurant about 1958. It is asserted that almost all of the tract in Park Ridge was woodland in 1923 and for a long time thereafter. It is not disputed, however, that access to the restaurant has always been over a driveway from Spring Valley Road over one side of the Park Ridge portion of the tract.
When, early in 1961, Alineri began to pave a substantial portion of what it claimed to be its regular parking grounds, plaintiffs protested to the building inspector. He stopped the work and informed Alineri that it would have to obtain a "special permit" from the board of adjustment. Alineri proceeded to file an "application" with the board on its printed form, stating "applicant desires to complete paving of parking area * * *. Applicant contends it does not need a permit or variance." A rough sketch of the site and of the area of the proposed paving was annexed to the application.
The board conducted a hearing. Minutes were taken of the substance of the proceedings by the recording secretary of the board, but no verbatim stenographic transcript of the hearing was made. From these minutes it is clear that the board was uncertain whether it was conducting an appeal from the building inspector's action (N.J.S.A. 40:55-39 (a)), an application for a variance from the restrictions of the zoning ordinance ((d) of the same section), or both. The testimony taken was sketchy and vague. Much of the hearing bore upon matters irrelevant to either type of proceeding. The minutes of the "Executive Meeting" and the resolution adopted the same day are devoid of any findings of fact, legal conclusions, or reasons for variance purporting to have been adopted by the board as a body. The minutes indicate a different view of the nature of the proceedings by each of the three sitting *550 members of the board. The only expression by the board as a whole is of the grant of permission to Alineri to go ahead with the paving. There is no basis for the argument by defendants that the board's action is sustainable as a special exception under N.J.S.A. 40:55-39 (b). Not only does it not purport to be such, but the Park Ridge ordinance does not provide therefor.
For reasons which have been explained too many times in the past to require restatement now, the action of the board is fatally defective and must be set aside. See Tomko v. Vissers, 21 N.J. 226 (1956); Dolan v. DeCapua, 16 N.J. 599 (1954); Reinauer Realty Corp. v. Paramus, 34 N.J. 406 (1961); Kempner v. Edison Tp., 54 N.J. Super. 408 (App. Div. 1959).
Alineri argues that the procedural deficiencies may be disregarded on the substantive ground that its use of the parking area does not violate the residential restriction of the zoning ordinance, and that therefore it need not have applied to the board in the first place. The contention is that parking of automobiles incidental to the operation of a restaurant does not constitute such parking a commercial use, and that therefore it makes no difference whether the area now sought to be used for such parking, although in a residential district, was used for that purpose when the nonconforming restaurant use began. We are in emphatic disagreement. See Palisades Properties, Inc. v. Brady, 79 N.J. Super. 327, 342-343 (Ch. Div. 1963); and cases cited therein at the pages indicated; 1 Rathkopf, Law of Zoning and Planning (3d ed. 1962), 13-9; Village of Great Neck Estates v. Bemak and Lehman, 228 N.Y.S. 917 (App. Div. 1928), affirmed 248 N.Y. 651, 162 N.E. 562 (Ct. App. 1928); City of Yonkers v. Rentways, Inc., 304 N.Y. 499, 109 N.E.2d 597 (Ct. App. 1952); Commonwealth v. Cieslak, 179 Pa. Super. 441, 115 A.2d 418 (Super. Ct. 1955). The predominant viewpoint, as reflected by the authorities cited, supports the position that land used as a means of access to, or for the parking of vehicles of patrons of, a business, is in a use accessorial to the business and *551 thus is itself in legal contemplation being used for the business purpose in question. Such use therefore contravenes a zoning ordinance which restricts the parking or access land to residential uses. We are in accord. Cf. Rain or Shine Box Lunch Co. v. Newark Bd. of Adjust., 53 N.J. Super. 252 (App. Div. 1958).
If Alineri was using all of the land it now proposes to pave for parking cars when the zoning ordinance was adopted, its use is a valid nonconforming use and it may pave it for present use as such. Paving of an existing parking area would not constitute an illegal extension of a legal nonconforming use for that purpose, and we do not understand plaintiffs to argue otherwise. But plaintiffs do assert that defendant was not using for parking, when the ordinance was adopted, all the land it now proposes to pave. If that is so, then Alineri's rights depend upon application to the facts here to be disclosed of the rule stated in Gross v. Allan, 37 N.J. Super. 262, 272 (App. Div. 1955):
"The inception of a nonconforming use on a limited part of a plot does not necessarily constitute a preemption of the entirety of the plot for uses of that character, as against a later prohibitory zoning ordinance. DeVito v. Pearsall, 115 N.J.L. 323, 325 (Sup. Ct. 1935); Martin v. Cestone, 33 N.J. Super. 267, 270 (App. Div. 1954). The criterion is whether the nature of the incipient nonconforming use, in the light of the character and adaptability to such use of the entire parcel, manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance. Cf. Lamb v. A.D. McKee, Inc., 10 N.J. Misc. 649 (Sup. Ct. 1932)."
The case will therefore be remanded to the board of adjustment. Alineri will file and give notice of a new application there, clearly indicating whether it is prosecuting an appeal, seeking a variance, or both, in the alternative, and making appropriate recitals of fact. We strongly urge the making of a stenographic record of the hearing and that the board of adjustment be afforded counsel, see Rain or Shine Box Lunch Co. v. Newark Bd. of Adjust., supra (53 N.J. Super., at p. 263), so that its conclusions may be embodied in *552 a proper determination incorporating findings of fact and legal conclusions. In addition to fact findings, there must be a statement of reasons and of the specified requisite statutory findings under N.J.S.A. 40:55-39 if a variance is recommended to the governing body under paragraph (d) thereof. Findings and conclusions are desirable even if the variance is refused. Cf. Reinauer Realty Corp. v. Paramus, supra (34 N.J., at pp. 418, 419).
Although the resolution has been set aside for the reasons mentioned, yet, since the board will act on the matter anew, reference should be made to plaintiffs' separate point that the action of the board should be voided for lack of compliance with N.J.S.A. 10:4-1, commonly known as the "Right to Know Law," enacted as L. 1960, c. 173. With certain exceptions not here applicable (inclusive of the office of the Governor and the Judicial and Legislative Branches of State Government), that act requires that "The public shall be admitted to any meeting of a public body at which official action is taken." N.J.S.A. 10:4-3. An official action is a determination made by vote. N.J.S.A. 10:4-2. There is no dispute that official action was taken at the "Executive Meeting," i.e., the vote on the application (there was no vote on any other occasion), and that the meeting was not open to the public.
Alineri argues that the board of adjustment is not a public body within the intent of the act. We hold it is. N.J.S.A. 10:4-2 defines a "public body" as "a commission, authority, board, council, committee and every other group of 2 or more persons organized under the law of this State to perform a public governmental function by official action." We think it too clear for extended debate that the statutory board of adjustment is such a body.
The trial judge noted, and the defendant officials stress, that the act states that "official action taken in violation of the requirements of this act shall be voidable in a proceeding in the Superior Court," thereby supposedly indicating a legislative intent that the voiding of such action should rest in *553 the discretion of the judge. The court concluded that since no impropriety or bad faith on the part of the board was indicated, it should exercise its discretion to permit the action to stand. We think the court took too narrow a view of the intent and underlying policy of the statute. The purpose of the act, as reflected in N.J.S.A. 10:4-1, is to implement the declaration therein that it is "the public policy of this State to insure the right of the citizens of this State to attend meetings of public bodies * * * for the protection of the public interest." In other words, the object of the act is primarily prophylactic, and not necessarily restricted to creation of a remedy for illegalities at particular public meetings from which the public is excluded. Appropriate implementation of that object and policy calls, as a general rule, for the Superior Court upon proper application to set aside any official action, as defined by the act, which is taken without compliance with the prescriptions of the statute, as here. We need not now decide that no discretion is ever to be reserved to the court to save the validity of official action taken in contravention of the statute. That question may be left to await a case where a sufficiently impelling counter-interest may be argued to be-speak sustaining the action impugned. It suffices here to say that mere absence of bad faith or other impropriety on the part of the public body should not ordinarily move the court to stay its hand in voiding official action taken contrary to the statute upon proper application therefor. We may add that the statute clearly does not prohibit a closed conference meeting of a public body at which no official action as defined by the act takes place.
Reversed and remanded to the board of adjustment for further proceedings consistent with this opinion.