80 N.J. Super. 454 (1963)
194 A.2d 26
HELEN R. KRAMER, ET AL., PLAINTIFFS,
v.
BOARD OF ADJUSTMENT, SEA GIRT, BOROUGH OF SEA GIRT, STOCKTON HOTEL, INC., A CORPORATION, DEFENDANTS. JOHN J. CROSS, ET AL., PLAINTIFFS,
v.
BOARD OF ADJUSTMENT OF SEA GIRT, THE BOROUGH OF SEA GIRT AND STOCKTON HOTEL, INC., A BODY CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 26, 1963.
*455 Mr. William L. Dill, Jr., argued the motions for plaintiffs Kramer et al. (Messrs. Stryker, Tams & Dill, attorneys; Mr. William T. Sutphin on the brief).
Mr. William R. Blair, Jr., argued the motions for plaintiffs Cross et al. (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. Morris M. Schnitzer argued the motions for defendant Stockton Hotel, Inc. (Messrs. Kasen, Schnitzer & Kasen, attorneys).
Mr. Paul R. Cranmer argued the motions for defendants Board of Adjustment of Sea Girt and Borough of Sea Girt.
*456 KNIGHT, A.J.S.C.
This consolidated action comes before the court on a motion by plaintiffs Kramer et al. for summary judgment in an action in lieu of prerogative writs challenging the validity of a variance recommended by defendant board of adjustment and granted by defendant Borough of Sea Girt. Plaintiffs Cross et al. did not formally join in this motion. Defendant Stockton Hotel, Inc. moves to consolidate two subsequent actions commenced by the same plaintiffs against the same defendants which challenge further actions taken by defendants board of adjustment and Borough of Sea Girt which occurred some two months after the filing of the original complaints.
The basic facts are not in dispute. On February 2, 1963 defendant Stockton appealed to the board of adjustment (hereinafter referred to as the board) pursuant to N.J.S.A. 40:55-39(d) from the refusal of the building inspector to grant a permit to erect a hotel on premises owned and occupied by Stockton as a nonconforming hotel use. The board conducted lengthy hearings on February 14, 1963 and on several dates thereafter. At the conclusion of the testimony on March 14, 1963 the board chairman announced:
"The meeting is then closed, and the hearing is over, the Board will deliberate and in the matter of a few days the decision will be announced publicly."
Thereafter, the board met three times in executive session. The first two meetings were deliberative sessions, but at the final executive session on March 26, 1963 the board voted to recommend that the variance be granted. On April 9, 1963 the mayor and council met at a regular public meeting and voted to adopt the board's recommendation. Thereafter, on May 22, 1963, plaintiffs commenced two separate actions (consolidated on June 17, 1963) challenging the validity of the actions of the board and the governing body on various procedural grounds and on the merits.
*457 On June 25, 1963 Wolf v. Zoning Board of Adjustment, 79 N.J. Super. 546 (App. Div. 1963), was decided, and that decision apparently caused the board to be concerned over the legality of its vote taken in executive session, for thereafter, on July 18, 1963, it published the following notice in a newspaper of general circulation in the municipality announcing that on July 22, 1963:
"* * * further action will be taken in the matter of the application of Stockton Hotel, Inc., for a variance to erect a new hotel building in accordance with its petition and the exhibits and documents previously submitted."
At that meeting the chairman stated that the action was taken on the initiative of the board since "there may be some question as to the propriety of the vote taken at the meeting of the 26th of March, because that meeting was in effect an executive meeting and was not open to the public." Compare Tidewater Oil Co. v. Mayor and Council of Carteret, 80 N.J. Super. 283, 289 (Law Div. 1963). Counsel for plaintiffs Cross et al. objected to any further action by the board on the ground that the board lacked jurisdiction while the matter was before the Superior Court, and further, that notice of the meeting was neither timely nor proper. With counsel's objections being duly noted, the board resubmitted its resolution of March 26, 1963 and again voted to recommend that the variance be granted. At a regular public meeting on July 23, 1963 the governing body adopted the board's recommendation and granted the variance.
At the pretrial conference on August 7, 1963 defendants were permitted to amend their pleadings to recite the actions taken by the board and the governing body on July 22 and July 23 respectively. Thereafter, on August 29, 1963, plaintiffs filed complaints challenging the validity of the above mentioned actions.
The court will grant defendants' motion for consolidation since:
*458 (1) The entire controversy deals with the validity of the action taken in recommending and granting the variance in question. Thus, the sole issue, stripped of all legal technicalities, is the same in both suits. Further, the parties are identical.
(2) The events occurring on July 22 and 23 are presently embodied in the pretrial order, albeit over plaintiffs' objection.
(3) Defendants set forth the events occurring on July 22 and 23 as a defense to the alleged invalidity of the board of adjustment's earlier vote taken at executive session. Ordinarily, plaintiffs' next procedural step would be by way of reply to the affirmative defense. See R.R. 4:7-1 and Tortorello v. Reinfeld, 6 N.J. 58 (1950). Of course, an affirmative defense and matters in avoidance thereof may be presented, without pleading, by a motion for summary judgment. 2 Schnitzer & Wildstein, N.J. Rules Service A IV-126, Feil v. Senisi, 7 N.J. Super. 517 (Law Div. 1950). But here, plaintiffs ignore these events in their supporting brief for summary judgment and instead seek to make them the subject matter of a separate suit. Such pleading only adds confusion to a case already overburdened with alleged procedural deficiencies.
Plaintiffs' motion for summary judgment rests solely on the ground that the March 26, 1963 action of the board was not in compliance with N.J.S.A. 10:4-1 et seq., and therefore its resolution must be set aside by the court as "illegal and invalid." And further, by reason of such invalidity, the matter was not properly before the governing body on April 9, 1963.
N.J.S.A. 10:4-3 directs that "The public shall be admitted to any meeting of a public body at which official action is taken," and N.J.S.A. 10:4-5 further provides that "Official action taken in violation of the requirements of this act shall be voidable in a proceeding in the Superior Court."
*459 In Wolf v. Zoning Board of Adjustment, supra, a somewhat analogous factual situation was presented. There the board of adjustment, in executive session, overruled the building inspector and granted a "request" to allow the paving of a parking area. On appeal the board's action was reversed because of numerous procedural deficiencies, one being the violation of the above-quoted "Right to Know Law." Defendants' contention that so much of the Wolf opinion as refers to N.J.S.A. 10:4-1 is dictum is without merit. The "Right to Know Law" was argued by counsel and deliberately passed on by the Appellate Division. As such, the court's construction of N.J.S.A. 10:4-1 et seq. did not constitute mere obiter dictum. Delaware, L. & W.R.R. Co. v. Division of Tax Appeals, 2 N.J. Super. 93 (App. Div. 1949), affirmed 3 N.J. 27 (1949). At the least, the court in Wolf rested its judgment on alternative grounds so that each is the authoritative decision of the court. Ibid.
Defendants, however, seek comfort in the following language found in the Wolf decision:
"We need not now decide that no discretion is ever to be reserved to the court to save the validity of official action taken in contravention of the statute. That question may be left to await a case where a sufficiently impelling counter-interest may be argued to bespeak sustaining the action impugned." 79 N.J. Super., at p. 553
Defendants offer three arguments in an attempt to supply the "sufficiently impelling counter-interest":
(1) The Stockton variance has been before the board of adjustment on two separate occasions within the past two years. Each time the board conducted extended public hearings on the merits and voted to recommend the variance; and further, since the much publicized Stockton variance is a subject of deep moment to the community, every objective of the "Right to Know Law" was therefore satisfied.
Such a contention disregards the express language of N.J.S.A. 10:4-1 which states that "The legislature finds and declares *460 it to be the public policy of this State to insure the right of the citizens of this State to attend meetings of public bodies * * * for the protection of the public interest." The fact that there was extensive testimony and publicity surrounding the Stockton variance adds impetus to the right of the public to attend the board's session at the precise time that its members vote.
(2) The approvals of the governing body constitute the definitive action in this case, and all such actions were taken at public meetings. In this manner defendants seek to distinguish the Wolf case, where the Board of Adjustment of Park Ridge purported to render a decision as opposed to a recommendation pursuant to N.J.S.A. 40:55-39(d). But such a conclusion is a mere distinction without a difference, since N.J.S.A. 10:4-2 unequivocally defines "official action" as a determination made by vote. Thus, the fact that the governing body voted at a public meeting  whether or not the "definitive action"  cannot change the fact that the board of adjustment voted in executive session.
(3) The actions of the board and the governing body on March 26, 1963 and April 9, 1963, respectively, have since been "supplemented" by the board's action of July 22, 1963 and the governing body's approval on July 23, 1963.
Indeed, defendants are compelled to take the position that the July 22 action of the board was "supplementary," since it is clear that this action, if standing alone, would be procedurally deficient. It is axiomatic that the party seeking the variance must present evidence sufficient to allow the board to act. Tomko v. Vissers, 21 N.J. 226 (1956); Russell v. Tenafly Bd. of Adj., 31 N.J. 58 (1959). Here, there was no independent review of any petition and no testimony was submitted on behalf of defendant Stockton. Thus, apart from other procedural steps which the board appears to have ignored or overlooked, it is clear that the board's resolution of July 22, in and of itself, is merely a hollow statement of the *461 affirmative and negative findings required by N.J.S.A. 40:55-39(d).
In support of defendants' position that the July 22 action of the board was supplementary, numerous cases are cited where an ordinance in question was amended pendente lite. This court is well aware that "the zoning ordinance in effect at the time the case is ultimately decided is controlling." Hohl v. Readington Tp., 37 N.J. 271 (1962), and cases cited at page 279. These cases, however, present at best a weak analogy, since the action referred to is legislative, as opposed to quasi-judicial, and within the legislative authority delegated to the governing body. Perhaps more in point is Tzeses v. Board of Trustees of South Orange, 22 N.J. Super. 45 (App. Div. 1952). There the board of adjustment was permitted to make supplemental findings on the theory that:
"* * * if there had been no findings to support the action of the board of adjustment, this court would have directed the board to set forth its findings or, at most, would have annulled the record without prejudice to further proceedings by the board * * * The supplemental findings do not, under the circumstances, impair any right of the appellants, and they enable the court to deal with the main issue directly and at once." (22 N.J. Super., at p. 58)
But even the Tzeses decision does not fully support defendants' position. Initially, it should be noted that Judge Goldmann condemned the filing of supplemental findings by a board of adjustment months after it had granted a variance as a "loose and undesirable practice." As he duly observed: "A board of adjustment is a quasi-judicial body, and as such it should act judicially."
In New Jersey Bell Tel. Co. v. Communication Workers, etc., 5 N.J. 354 (1950), an arbitration board filed its findings of fact five weeks after the board had issued its order. In refusing to sustain the board's order, the court stated:
"Unless the written findings of fact precede the making of the order, opportunity is presented to `back into an order' through the expedient *462 of drafting findings of fact to support an order previously made. As a matter of public policy this opportunity should be prevented." (at p. 380)
In the instant case the board of adjustment did not make supplementary findings; rather, a supplementary roll call vote was taken at a public meeting. This additional factor merely serves to further distinguish Tzeses v. Board of Trustees, supra. In Tzeses Judge Goldmann reluctantly permitted the board to make supplemental findings as a matter of expediency. See also Ackerman v. Board of Commissioners, 1 N.J. Super. 69, 75 (App. Div. 1948), Mackler v. Board of Education of Camden, 16 N.J. 362 (1954). In the above cases, supplementary findings were permitted as opposed to the alternative choices of either remanding to the board for further findings or annulling the record without prejudice to further proceedings. In each case, the supplementary findings were important to the appellate process since they reflected upon the rationale for the board's decision. See Colpaert v. Colpaert, 48 N.J. Super. 488 (App. Div. 1958). Thus, the point that in the interests of expediency, the court should deal with the main issue at once was obvious. But in the instant case the supplemental vote taken by the board of adjustment on July 22, 1963 in no way aids the reviewing court. There was merely a verbatim resubmission of findings and conclusions followed by a "rubber stamp" vote taken for the express purpose of "re-voting upon the Stockton Hotel matter." To be sure, as defendants seem readily to acknowledge, the prior proceedings are in fact defective and violative of N.J.S.A. 10:4-1 et seq. Hence, it is obvious that the perfunctory action of the board of adjustment and the governing body on successive days in July 1963 nearly four months after the board had voted in executive session does not operate to "cure" this defect within the meaning of the Wolf decision, supra.
The board's capacity to deal with the matter while it is pending before this court is at best a very limited one. Stated *463 more succinctly, it is the opinion of the court that under the facts of this case, while the suit challenging the validity of the board's recommendation to grant a variance was pending in the Superior Court, the board was without jurisdiction to take further action except on remand by the court.
In In re Plainfield-Union Water Co., 14 N.J. 296, 302 (1954), Justice Heher stated the jurisdictional principles applicable to judicial and administrative bodies alike:
"The filing of the notice of appeal invokes the jurisdiction of the appellate tribunal * * * And by the same token, the appeal divests the lower court of jurisdiction save as reserved by statute or rule. [citations] Jurisdiction is restored by the mandate of the appellate court, but not in derogation of the judgment of the appellate tribunal embodied therein."
This is the second time that the Stockton variance has been challenged in this court, and in a prerogative writ action where matters of great public interest are involved, the parties and the public normally are entitled to an early meritorious resolution of the controversy on the merits. Nevertheless, if, as defendants contend, the Stockton variance is a subject of deep moment to the community, then it follows that the public had a right pursuant to N.J.S.A. 10:4-1 to attend the meeting of the board on March 16, 1963 at the time that the vote was actually taken. The time was then ripe for each member of the board of adjustment to stand before all who wished to attend and publicly announce his vote. A formal "re-run" of the board's vote nearly four months later could not possibly be in the spirit of N.J.S.A. 10:4-1, which insures "the right of the citizens of this State to attend meetings of public bodies * * * for the protection of the public interest." Just as the board of adjustment is obligated to act within its jurisdictional powers as prescribed by the enabling statute, Auciello v. Stauffer, 58 N.J. Super. 522 (App. Div. 1959), it must also comply with a statute as basic and fundamental as the "Right to Know *464 Law." In this sense, compliance should not be construed to mean a patchwork attempt to rectify or supplement proceedings which are clearly deficient, particularly since a zoning board is permitted to exercise far less discretion than a typical regulatory agency and is subject to far greater procedural requirements. Lubliner v. Board of Alcoholic Beverage Control, 59 N.J. Super. 419, 429 (App. Div. 1960), modified 33 N.J. 428 (1960).
If this court were to permit the actions of the board to stand, it would be tantamount to an express sanction to circumvent the requirements of N.J.S.A. 10:4-1 et seq. Every commission, board and public authority would then be invited to vote in executive session and take the risk that the proceeding would go unchallenged. And if challenged on appeal, the administrative tribunal simply could meet the objection by hastily revoting at a public meeting. Clearly, such a procedure, even if taken in good faith, cannot be condoned.
It is the opinion of this court that the resolution of the board of adjustment on March 26, 1963 is void for failure to comply with N.J.S.A. 10:4-1 et seq. and the mandate of Wolf v. Zoning Board of Adjustment, supra. This ruling disposes of the alternative motions pending before this court.
The motion of plaintiffs Kramer et al. for summary judgment is granted.
Counsel may submit an appropriate judgment.