220 N.J. Super. 161 (1987)
531 A.2d 770
WHISPERING WOODS AT BAMM HOLLOW, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND HARRY KANTOR, FRANK DIMISA AND VICTOR LOSQUADRO, PLAINTIFFS,
v.
TOWNSHIP OF MIDDLETOWN PLANNING BOARD, AND JUDITH STANLEY, DEFENDANTS, AND SUNNYSIDE OPEN SPACES, ET AL., DEFENDANTS-INTERVENORS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided June 3, 1987.
*162 Steven J. Tripp, for plaintiffs (Wilentz, Goldman and Spitzer, attorneys)
*163 Leslie Vincent, for the defendant Planning Board (Jerry J. Massell, attorney)
Stanley Yacker, for defendants-intervenors.
McGANN, J.S.C.
This matter came before the Court on plaintiffs motion for summary judgment dismissing the Counterclaim and Crossclaim of the defendants-intervenors and a cross-motion for summary judgment in favor of defendants-intervenors seeking a declaration that a "settlement" entered into between the plaintiff developer and the Planning Board in this litigation is void and of no legal effect. The facts on which both parties argue are not in dispute. They have fully briefed the legal issues. The matter is ripe for summary judgment.
Plaintiffs are the owners of a 275 acre tract of land (presently known as Bamm Hollow Country Club) located in an area of Middletown Township zoned for residential uses. On March 18, 1986 they filed an application with the Planning Board for conditional use, site plan and subdivision approvals as well as certain design waivers to enable them to develop the tract by the construction of 215 residential units surrounding a full, 18 hole golf course. The first public hearing on the application was duly scheduled for April 30, 1986. Subsequent public hearings were conducted on May 28 and June 18, 1986. All meetings were well attended. It was a matter of substantial public interest. The plaintiffs made a full presentation before the Board by way of expert testimony from professional planners, architect, engineer and traffic consultant. Detailed plans, supporting documents, expert reports and drawings were marked as exhibits. Input from the public was received by the Board. At the conclusion of the hearing on June 18, 1986, by a vote of five to four, the Board denied the application. A formal written resolution to that effect was not, however, prepared and entered. N.J.S.A. 40:55D-10g.
*164 Instead the plaintiffs, through counsel, persuaded the Board to reopen the matter and reschedule it for a public hearing to consider a revised plan intended to address the concerns of the majority members who had voted to deny the application at the regular meeting of July 18, 1986. August 6, 1986 was set as the "workshop meeting" at which the revised plan would be informally discussed with the Board and August 20, 1986, as the public hearing date. Plaintiffs waived the time limitations under N.J.S.A. 40:55D-10g(2). Contrary to the plaintiffs' expectations, when the Board met again on August 6, 1986 it did not consider the revised plan but instead voted a resolution to memorialize the prior denial (on June 18, 1986) of the original plan. Nonetheless the Board's agenda for its August 20, 1986 public meeting listed as an item to be considered a "review of revised plans" for Bamm Hollow. Plaintiffs duly complied with the Municipal Land Use Law by notifying all property owners within 200 feet of that meeting and also by publishing newspaper notice.
Since notice of the August 6th memorializing resolution had been published in the newspaper and in order to stay within the 45 day time limitation set by R. 4:69-6, plaintiffs filed this action in lieu of prerogative writs on August 20, 1986. Named as defendants were the Board and its Chairperson, Judith Stanley.
The complaint contains three counts. The first count sets forth the usual claim that the denial by the Board was arbitrary, capricious, unreasonable and illegal. The second count sought to set aside the resolution of denial as well as the oral 5-4 vote on the ground that both actions of the Board were "tainted" by the participation and vote (negative to plaintiffs in both instances) of Stanley because of the conflicting interests which motivated her vote. The third count alleged reversible "taint" in the Board's proceedings based on the fact that a condemnation action by the County of Monmouth against the Bamm Hollow tract was not only pending but loomed large (and improperly) in the thinking of the members who had voted to deny the application.
*165 Concomitant with the filing of the Complaint the Court entered an Order to Show Cause as initial process. It contained a temporary restraint against Stanley's participating in any further Board proceedings affecting the Bamm Hollow property. For the return date of September 10, 1986, the Board was directed to show cause why the vote of denial of the application should not be set aside as invalid and Stanley was directed to show cause why the temporary restraint should not be continued pendente lite. Stanley's Answer, Counterclaim and Motion to dissolve the temporary restraint were filed on September 2, 1986. On the return date an order was entered denying the motion to dissolve the restraints and continuing the restraints and return date of the order to show cause to a date to be fixed. An interlocutory appeal by Stanley to the Appellate Division was denied on September 11, 1986.
At the Board level other actions were occurring in the meanwhile. At its regular meeting of August 20, 1986 (and with the restraint against Stanley's participation in place) the Board requested a closed session meeting with plaintiffs' counsel to discuss settlement of this litigation. A proposed settlement by way of a revised plan to meet the concerns of the members (other than Stanley) who had voted against the original application was arrived at. A majority (6-1) of the Board was favorably inclined based on an informal poll. Counsel for the Board and for the plaintiffs subsequently agreed on the specific terms of a Stipulation of Settlement which was then reduced to writing. At a public meeting of the Board held September 3, 1986, a majority (7-1) voted to approve that Stipulation. Counsel for the Board and for the plaintiffs then signed the Stipulation on September 11th and filed it with the Court on September 12, 1986.
Aware, apparently, of the settlement negotiations being conducted by the Board and the plaintiffs, various civic associations and affected property owners filed a motion to intervene as parties-defendant on September 2, 1986. Over plaintiffs' objection that motion was granted on September 24, 1986. The *166 intervenors filed their Answer, Counterclaim and Crossclaim on September 26, 1986. The First Count of the Counterclaim  Crossclaim attacked the "action" taken by the Board at the August 20th meeting as void because of an alleged violation of the Open Public Meeting Law as well as because of a claimed lack of "jurisdiction" of the Board to act while this action was pending in court. The Second Count seeks a dismissal of any reapplication by plaintiffs on the ground that they have no "standing" because the County of Monmouth had instituted condemnation proceedings against the property and had filed a declaration of taking. By order of December 22, 1986 the issues raised by the intervenors were severed from those raised in the Complaint for purpose of trial. Intervenors' issues were directed to be first resolved.
The Stipulation of Settlement filed with the court recites the original application made by plaintiffs; the fact that, with additional agreed-to requirements, the application for preliminary major subdivision approval and the requested design waivers is granted. The additional agreed-to items were: 1) that no overall site grading questions remained open. (Individual lot grading requirements of the Township Engineer were to be addressed either at the time of final subdivision approval or when application was made for issuance of a Building Permit); 2) a new replanting plan showing the planting of trees after site clearance; 3) preparation of appropriate legal documents which would insure the open space use of the golf course in perpetuity either for a golf course or other open space or recreational purposes and upon terms protecting the interests of the current membership of the existing golf course and the future interests of the home owners in the proposed development. 4) Compliance by the developers with the requirements of the Township Engineer as to various sidewalk and street construction and 5) the payment of additional engineering review fees to the Township Engineer. From the standpoint of a major subdivision of the magnitude involved here, those requirements may rightly be termed insubstantial changes from the original submission.
*167 The Stipulation further provided that "This application, including the discussion of any items which are conditions of this approval shall be heard on September 3, 1986, and thereafter if necessary, as previously resolved by Defendant, Township of Middletown Planning Board." The return date of the Order to Show Cause signed August 20, 1986 was agreed to be October 8, 1986 in order to allow for the following action to occur. "The within, settled matter, shall become a matter of public record and shall be ... considered at a public hearing after due notice, with any questions or comments from the public to be limited to any new evidence presented." The Stipulation further provided: "Once the conditions of approval herein are approved by the Defendant at a public meeting and resolution published to that effect, a Consent Order or Stipulation of Dismissal dismissing the matter as between the parties who are signatories to this agreement shall be filed."
Subsequent to the September 3, 1986 Board meeting, plaintiffs submitted a revised tree planting scheme to the Board and provided newspaper notice and notice to all property owners within 200 feet of the premises of a hearing to be held concerning the Bamm Hollow matter by the Board on September 17, 1986. The notice indicated that the Board and plaintiffs had settled the litigation and that such settlement was discussed and entered on the record at a public meeting on September 3, 1986. The notice further provided that a public hearing would be held on September 17, 1986 at which time members of the public could appear either in person, or by agent or attorney, and present any comments or objections to "any evidence presented by the applicant relating to the settlement."
On September 17, 1986, the Board conducted a public hearing to consider the additional evidence provided by plaintiffs pursuant to the stipulation of settlement. Intervenors and their attorney were present. At the conclusion of that meeting, the Board initially voted to approve the revised tree planting scheme, and then voted in favor of a written resolution to confirm the stipulation of settlement previously entered into *168 and to approve the application based on the stipulation and the additional evidence presented by plaintiff.
Notice of the Board's action at its September 17, 1986 meeting was published in the Asbury Park Press on September 21, 1986. A Stipulation of Dismissal without prejudice of this action against the Board, signed by the attorneys for the plaintiffs and the Board, was filed on December 8, 1986.
The Plaintiffs seek dismissal of the counterclaim of the defendants-intervenors against them and the crossclaim against the Board. The Board joins in that motion. By way of cross-motion for Summary Judgment the defendants-intervenors ask that judgment be entered in their favor setting aside the Stipulation of Settlement and the actions of the Board in approving the same.
There is no merit to the Second Count of the intervenors Counterclaim-Crossclaim based on the plaintiffs' alleged lack of standing to proceed before the Board. A condemnation action had been commenced by the County of Monmouth on March 31, 1986 (Docket No. L-03250-86). However, by order of the court dated April 14, 1986 vesting of title and possession in the County was stayed. Plaintiffs were never deprived of title and had standing as owners. That condemnation action was dismissed on January 9, 1987. Plaintiffs' motion for summary judgment on the Second Count of the intervenors Counterclaim-Crossclaim is granted.
The intervenors advance two reasons which they believe justify the relief[1] they seek:
*169 1. Absent a remand from this court, the Board was without jurisdiction to consider its prior denial and enter into the Stipulation of Settlement based on a revised submission.
2. The actions taken by the Board are void because they were in violation of the Sunshine Law (N.J.S.A. 10:4-6 et seq.).

I
After the filing of this action in lieu of prerogative writs and absent a remand order from this Court, was the Board deprived of either the right or the power to negotiate with the plaintiffs a settlement of this action based on a revised application? Simply put, did the board lose "jurisdiction" upon the filing of the complaint herein in a manner analogous to the loss of jurisdiction by a trial court upon the filing of a notice of appeal? See R. 2:9-1(a). The intervenors find support for their position in Kramer v. Board of Adjustment, Sea Girt, 80 N.J. Super. 454 (Law Div. 1963) and in Morton v. Mayor & Council of Twp. of Clark, 102 N.J. Super. 84 (Law Div. 1968), aff'd, 108 N.J. Super. 74 (App.Div. 1969). Neither case is precisely on point.
In Kramer the prerogative writ complaint had been filed challenging the validity of a variance recommended by the board of adjustment and approved by the governing body. The board had taken its affirmative vote in "executive session". The court challenge was based on the allegation that such action was invalid because it violated the "Right to Know Law" (N.J.S.A. 10:4-1 et seq.). While the court action was pending the board (after publishing a newspaper notice of the meeting) met and, in public, again voted to recommend the variance. *170 When that fact was brought to the attention of the Court, it held the action of re-voting was void and set forth this rationale (80 N.J. Super. at p. 462):
The board's capacity to deal with the matter while it is pending before this court is at best a very limited one. Stated more succinctly, it is the opinion of the court that under the facts of this case, while the suit challenging the validity of the board's recommendation to grant a variance was pending in the Superior Court, the board was without jurisdiction to take further action except on remand by the court.
In In re Plainfield-Union Water Co., 14 N.J. 296, 302 (1954), Justice Heher stated the jurisdictional principles applicable to judicial and administrative bodies alike:
"The filing of the notice of appeal invokes the jurisdiction of the appellate tribunal * * * And by the same token, the appeal divests the lower court of jurisdiction save as reserved by statute or rule. [citations] Jurisdiction is restored by the mandate of the appellate court, but not in derogation of the judgment of the appellate tribunal embodied therein."
The broad statement of the trial court, viz. that "the board was without jurisdiction to take further action except on remand by the court" is open to serious question. The raw power to take further action is always present. The key factor in Kramer was the original failure to comply with the Right To Know Law and did not necessitate a jurisdictional analysis in order to justify nullification of the subsequent re-vote.
However, the challenge here is not to the manner of the vote denying the variance. It is, as noted above, three-pronged: 1) that the action was arbitrary, capricious and unreasonable; 2) that it was infected by the conflicting interests of the chairperson; 3) that it was improperly affected by a pending condemnation action. No remand is required before the parties can explore settlement possibilities in a litigated case so long as the public interest is not disserved thereby. Edelstein v. Asbury Park, 51 N.J. Super. 368, 389 (App.Div. 1958).
In the Morton case the governing body had adopted the recommendation of the board of adjustment and voted to approve a use variance for a garden-apartment complex in a residential zone. Interested citizens mounted an attack on that action by a complaint in lieu of prerogative writs. While the *171 action was pending the governing body again met and rescinded its prior action. The court held it had no authority to do so. In reviewing the statutory scheme for the handling of variance applications the court commented (102 N.J. Super. at p. 90):
There is no provision in the statutory scheme for the initiation of reconsideration hearings either on the part of the applicant or the municipal governing body. In fact, in an N.J.S.A. 40:55-39(d) situation this court feels that the intention of the Legislature, as exhibited in its statutory enactments was to prevent such reconsideration in view of the availability of a proceeding in lieu of prerogative writs.
That view was supported by the citation of extensive case authority. The court then resolved the issue in the following fashion (p. 98):
Plaintiff's main contention is that defendants were without jurisdiction to exercise any power to overturn their previous decision in granting the variance, for the reason that an action was already instituted in the Superior court. Assuming arguendo that the township council did have the right to rescind a variance granted one year previously, this court is of the opinion that such power could not be exercised at the time, due to the fact that a Superior court proceeding in lieu of prerogative writs was instituted by plaintiffs shortly after April 27, 1964. The institution of that action divested the township council of jurisdiction.
The Kramer case is cited in support of that conclusion. Morton is likewise distinguishable on its facts. There, the governing body simply did an about-face without waiting for a judicial determination. Under the statutory scheme it had exhausted its power to act, when it voted approval. There was no legislative grant of a power to reconsider. That act was void. It simply chose to arrogate a non-existent power. The analysis from the standpoint of jurisdiction was unnecessary and misleading. Here in the context of the litigation the Board and applicant settled the litigation on a conditional basis; subject to public scrutiny. To argue that a remand order was necessary before the parties could discuss settlement is without merit. The intervenors cannot cite any authority for the proposition that a public body involved in litigation over one of its official acts cannot, through counsel, discuss and arrive at a conditional settlement of the litigated issues  absent a "remand" by the *172 court. The lack of such authority is persuasive that such a requirement does not accord with common sense.
A related issue suggested by the intervenors at oral argument is this. May the parties to an action in lieu of prerogative writs ever settle their litigation or must the case continue to a final determination? After all, goes the argument, litigation such as this does not involve mere private parties. A public interest is always present. It would be unthinkable that a Planning Board, for example, charged with the proper enforcement of local planning and zoning ordinances deny an application only to turn around and negotiate a final, binding approval of it in a modified form to settle the very litigation which ensued upon the denial. See Edelstein v. Asbury Park, above. If such a settlement could be final and binding that could be the hypothetical result. But it cannot be. The settlement must necessarily (as it was here) be conditioned upon a public hearing on the agreed plan  just as if a new application were being presented to the Board. In other words, any settlement must lead to a further official action by the public body. That action is subject to all of the statutory conditions necessary to vindicate the public interest  notice, public hearing, public vote, written resolution, etc. In addition, it is further subject to the complaint in lieu of prerogative writs.
Courts do, of course, favor settlements. They conserve judicial time but, more importantly, represent a rational resolution of a problem by the parties most closely involved and affected. That principle applies with equal force in prerogative writ litigation  so long as the public interest is not disserved thereby. If the settlement must be made known to the public; subject to the public voice and voted upon in legal fashion, the public interest has been served. Under those circumstances if the settlement meets with public approval, unnecessary legal expenses of a full trial are saved. If the settlement is perceived to be illegal, the dissatisfied interested parties have their right to commence a prerogative writ suit, challenging the approval of the settlement. In retrospect, that would have *173 been the better procedure for the intervenors to have followed. Rather than intervening in this action they should have initiated their own separate action seeking to void the approval vote taken by the Board at its September 17, 1986 meeting. Having intervened, they could have amended their Counterclaim-Crossclaim to seek that relief. They did not do so.
In that light the "jurisdictional" issue raised by the intervenors is exposed as without merit. The Board did have the power to settle the pending litigation by tentatively agreeing to an amended plan subject to public presentation, a public hearing thereon and a public vote. There is no need for a "remand". The terms of the settlement contain those conditions. After the tentative settlement, the Board not only had the power to consider the amended plan; it had the statutory responsibility to do so.

II
The intervenors argue that the "closed door" session held on August 20, 1986 violated the Open Public Meetings Law (N.J.S.A. 10:4-6 et seq.); that this violation tainted all further proceedings and was not cured by either the September 3, 1986 approval of the settlement at an open meeting, or by the public hearing and resolution of approval entered at the September 17, 1986 meeting.
The Board's agenda for its August 20th meeting had listed as an item to be considered a "review of revised plans" for Bamm Hollow. Earlier that day this litigation had commenced; the plaintiffs had obtained an order to show cause with restraints against Stanley. The Board's attorney had actively participated in that initial appearance. He advised his Board at the meeting that night what had transpired. Plaintiffs' counsel attended the meeting prepared to present proofs on the revised plan. The Board invited him into the closed session to see if there could not be a revised plan whose provisions would be satisfactory to a majority of the Board. Quite obviously there was *174 such a plan. Tentative agreement, subject to the attorneys' preparing the necessary wording, was reached.
Did that procedure violate the Open Public Meetings Law? It did not. N.J.S.A. 10:4-12(b)(7) is the applicable exception. It provides (in pertinent language):
A public body may exclude the public only from that portion of a meeting at which the public body discusses:
(7) Any pending ... litigation ... in which the public body is ... a party.
The language is clear. There is no reason to suppose that the Legislature meant other than what is stated. Intervenors cite no authority to the contrary.
Two further Board actions followed. At the September 3, 1986 public meeting it voted to approve the terms of the settlement as reduced to writing. A duly noticed public hearing on the revised plan was held on September 17th. At the end thereof, a resolution was adopted approving the revised plan. Intervenors make no Open Public Meeting Law challenge to either of those meetings or the actions taken thereafter. Should the actions taken at the August 20th meeting be deemed a violation of the Open Public Meeting Law, the subsequent actions on September 3rd and September 17th cured the deficiency. N.J.S.A. 10:4-15.
The argument based on the Open Public Meeting Law does not prevail.

III
The Answer, Counterclaim and Cross-claim filed by the Intervenors made no challenge to the actions taken either on September 3rd or September 17th. There has been no amendment to that Answer. The intervenors had the right to initiate a separate suit against the Board based on its September 17th resolution approving the revised plan. They have not done that either. R.4:69-6 bars any such amendment or separate action. But, more than that, the intervenors can point to no violation of *175 the Municipal Land Use Law based on the manner in which the application and the revision was handled by the Board.
It is undisputed that the public had been given full opportunity to be heard on every aspect of the plans approved by the Board on September 17, 1986. The application which is the subject of this litigation was considered by the Board, with due notice, at public hearings held on April 30, 1986, May 28, 1986 and June 18, 1986. During these hearings extensive evidence and testimony was presented to the Board by plaintiffs and the interested public, including defendants-intervenors. The hearing held on September 17, 1986 was conducted pursuant to the terms of settlement under the direction of the defendant Board. At that hearing, the public was given notice and full opportunity to be heard regarding all changes to the plans and any additional evidence required by the settlement. As such, it cannot be disputed that public hearings were held on every aspect of the plans approved on September 17, 1986 and therefore, the defendant Board was sufficiently informed to "insure an intelligently advised vote." Arlington Association v. Township Council Parsippany Troy Hills, 118 N.J. Super. 418, 421 (App.Div. 1972). Indeed, defendants-intervenors have been unable to identify any aspect of the plans which were not open to public comment.
For the foregoing reasons summary judgment is entered in favor of plaintiffs and the Board and against Defendants-Intervenors dismissing their Counterclaim and Crossclaim. Intervenors cross-motion is denied. I have signed the Judgment in the form submitted by Mr. Tripp.
NOTES
[1] Based on the present posture of the pleadings, that relief is quite limited. Specifically judgment is sought:

A. Enjoining plaintiffs and defendant Planning Board from conducting any further proceedings by way of submission of amended application and/or plans or re-applications or re-votes or further testimony or hearings until and unless the presently pending within action is fully concluded, remanded, or voluntarily dismissed by plaintiffs.
B. For such other relief as the Court may deem equitable and just. No restraint was ever entered as sought and the matter did proceed as noted above. The order of severance and of priority of issues was entered on December 22, 1986. The Stipulation of Dismissal of plaintiffs' action against the Planning Board was filed on December 8, 1986. Therefore, the only claim for relief pending is that which the Court may deem "equitable and just". For purposes of these cross motions that is deemed to be the intervenors' request for a declaration that the resolution of September 17, 1986 is void.