**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0788-22

SJ 660 LLC,

     Plaintiff-Appellant,

v.

BOROUGH OF EDGEWATER,
a municipal corporation of the
State of New Jersey,

     Defendant-Respondent,

and

BOROUGH OF CLIFFSIDE
PARK,

     Plaintiff/Intervenor-
     Respondent,

v.

BOROUGH OF EDGEWATER and
615 RIVER ROAD PARTNERS,
LLC,

     Defendants-Respondents,

and

EDGEWATER ZONING BOARD
OF ADJUSTMENT and JOHN
CANDELMO, Land Use
Administrator,

     Defendants.

_____

SJ 660 LLC,

     Plaintiff-Appellant,

v.

BOROUGH OF EDGEWATER, a
municipal corporation of the State
of New Jersey, BOROUGH OF
EDGEWATER PLANNING BOARD,
and 615 RIVER ROAD PARTNERS,
LLC,

     Defendants-Respondents,

and

BOROUGH OF EDGEWATER
COUNCIL,

     Defendant.

_____

BOROUGH OF CLIFFSIDE PARK,

     Plaintiff,

v.

2

BOROUGH OF EDGEWATER,

    Defendant-Respondent.

_____

Argued June 3, 2024 – Decided August 13, 2024

Before Judges Gilson, DeAlmeida, and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-8788-19, L-4882-20, and L-5095-20.

Steven G. Mlenak argued the cause for appellant (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Steven G. Mlenak, of counsel and on the briefs; Michael J. Coskey, on the briefs).

Joseph Mariniello and John A. Stone argued the cause for respondent Borough of Edgewater (Hartmann, Doherty, Rosa, Berman & Bulbulia and DeCotiis, Fitzpatrick, & Giblin, LLP, attorneys; John A. Stone, of counsel and on the brief; Joseph Mariniello, on the brief).

Roger Plawker argued the cause for respondent 615 River Road Partners, LLC (Pashman Stein Walder Hayden, PC, and Greenberg Traurig, LLP, attorneys; Justin P. Walder, of counsel; Roger Plawker, and Cory Mitchell Gray, of counsel and on the brief; Howard Pashman, on the brief).

Craig Bossong argued the cause for respondent Borough of Edgewater Planning Board (Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, attorneys; Craig Bossong and Chad Klasna, on the brief).

PER CURIAM

This appeal arises out of disputes related to long-standing efforts to develop a property in the Borough of Edgewater (the Borough). After years of litigation and related applications for zoning variances, 615 River Road Partners, LLC (RR Partners), which owns the property, entered into a settlement agreement with the Borough (the Settlement Agreement). The Settlement Agreement provided that (1) a parcel of the property would be designated as an area in need of redevelopment in accordance with the governing law; (2) a redevelopment plan would be adopted allowing RR Partners to build 1,200 residential units, including affordable housing units; (3) RR Partners would be appointed as the redeveloper; and (4) RR Partners would give another parcel of the property to the Borough so that the Borough could build a school and a recreational facility. Thereafter, in accordance with the procedures set forth in the Local Redevelopment and Housing Law (the LRHL), N.J.S.A. 40A:12A-1 to -89, a parcel of the property was designated as an area in need of redevelopment, the Borough adopted a redevelopment plan, and RR Partners was appointed as the redeveloper.

Plaintiff SJ 660 LLC (plaintiff or SJ LLC), which owns an adjacent property, filed a series of actions in lieu of prerogative writs, challenging the Settlement Agreement, the redevelopment designation and plan, and the

4

appointment of RR Partners as the redeveloper. Following a bench trial, the court rejected plaintiff's challenges and entered a judgment dismissing plaintiff's complaints with prejudice. Plaintiff now appeals from that judgment. Having reviewed the record and governing law, we reject all of plaintiff's arguments and affirm.

I.

The property, located at 615 River Road in Edgewater, was previously owned by the Hess Corporation (Hess), which operated an oil terminal on the property until 2013. The property consists of two parcels of land divided by River Road. The eastern parcel is designated Block 76, Lots 1 and 5, borders the Hudson River on its eastern side, and consists of approximately fourteen acres of land (the Eastern Parcel). The western parcel is designated Block 77, Lot 1, and consists of approximately five acres of land (the Western Parcel).

In December 2014, RR Partners purchased both parcels from Hess for approximately $26 million. At that time, the Eastern Parcel was zoned B-3, which allows commercial uses. The Western Parcel was zoned OR-1, which allows office and industrial uses.

In 2015, RR Partners applied to the Edgewater Zoning Board of Adjustment (the Zoning Board) for variances to allow it to develop the property

for residential purposes. RR Partners sought to construct multiple high-rise buildings with over 1,800 residential units. RR Partners' application was deemed incomplete, and RR Partners filed suit seeking default approval of the application (the Zoning Board Action). Thereafter, the court overseeing the Zoning Board Action granted summary judgment in favor of the Zoning Board and remanded the application. RR Partners then filed two additional applications, one for each parcel, again seeking variances to develop the property for residential purposes. The Zoning Board denied both of those applications without addressing the merits.

Thereafter, years of litigations ensued. Those litigations included a suit brought by RR Partners challenging the denial of its applications for variances. The Borough also passed a resolution and ordinance authorizing the taking of the Eastern Parcel by eminent domain. RR Partners then sued the Borough in federal court, alleging that the Borough had violated its constitutional and civil rights by favoring another developer who had been unsuccessful in purchasing the property (the Federal Action).

There were also several suits involving the Borough's compliance with its affordable housing requirements. The Fair Share Housing Center (FSH Center) brought a suit to compel the Borough's compliance with its affordable housing

obligations. The Borough also filed a declaratory judgment action concerning its affordable housing obligations. RR Partners brought its own affordable housing actions against the Borough and intervened in one of the other affordable housing actions because the property was one of the last properties in Edgewater eligible for redevelopment.

In late 2019, after extensive negotiations and mediation, RR Partners and the Borough resolved all their disputes and agreed to enter into the Settlement Agreement. Thereafter, the Borough's Council conducted an open public meeting and adopted a resolution authorizing the Settlement Agreement, which was then fully executed on December 19, 2019.

Under the Settlement Agreement, RR Partners and the Borough settled all the claims in the Federal Action, the Zoning Board Action, and the affordable housing actions. The Borough also agreed to end its efforts to condemn and take the Eastern Parcel by eminent domain. In dismissing the Federal Action, the federal court retained jurisdiction to enforce the Settlement Agreement.

Substantively, the Settlement Agreement details a series of actions the parties agreed to undertake to facilitate development of the property. In that regard, the Settlement Agreement states:

1.	RR Partners would convey the Western Parcel to the Borough so that a school and recreational facility could be built;

2.	The Borough "shall (i) in accordance with its April 2017 Master Plan Re-Examination Report, designate the Eastern Parcel as an Area in Need of Redevelopment as provided by [the LRHL], upon receipt of a recommendation to that effect from the Edgewater Planning Board, (ii) adopt a Redevelopment Plan for the Eastern Parcel substantially in the form annexed hereto as Exhibit H, (iii) designate [RR Partners] as the Redeveloper of the Eastern Parcel[,] and (iv) enter into a Redevelopment Agreement with [RR Partners] for the Eastern Parcel substantially in the form annexed hereto as Exhibit E," (boldface omitted);

3.	RR Partners agreed to reduce its proposed development from 1,873 residential units to 1,200 units;

4.	RR Partners committed to set aside at least fifteen percent of the residential units for rent and at least twenty percent of the residential units for sale as affordable housing units; and

5.	RR Partners agreed to undertake various infrastructure improvements and upgrades, including constructing a bus stop, and received the right to construct various additional improvements, including an elevated walkway across River Road and a new ferry stop.

Various provisions in the Settlement Agreement required RR Partners and the Borough to follow statutory and legal review processes. In that regard, the Settlement Agreement provides:

8

> [T]he settlement herein will, in part, provide [RR Partners] with an opportunity to develop the Eastern Parcel in accordance with this Agreement, conditioned on [RR Partners'] compliance with the criteria and procedure provided in the Municipal Land Use Law, N.J.S.A. 40:55D-1 [to -163] [(the MLUL)], [the LRHL], Affordable Housing Law, and other law and regulation where applicable.
>
> . . . .
>
> . . . The parties hereto agree that this Agreement is not in conflict with the MLUL, the LRHL[,] and/or the municipal ordinances of [the Borough] and that nothing herein is or shall be deemed by the Parties to be in derogation thereof or of [the Borough's] and the Planning Board's obligations and duties thereunder.
>
> . . . .
>
> . . . Upon execution of this Agreement, the Parties and their respective counsel shall cause to be filed a joint Motion requesting approval, after a Mount Laurel Fairness Hearing, of [RR Partners'] agreement to provide an affordable housing component as set forth in Paragraph 4 hereof pursuant to this settlement.

Separately, the Borough and FSH Center settled their affordable housing litigations. In July 2020, the court overseeing those litigations conducted a fairness hearing and conditionally approved the Borough's compliance plan, which included the affordable housing set aside in the Settlement Agreement. The final compliance hearing was conducted in October 2021, and, the following

month, a final judgment of compliance and repose with conditions was entered in the affordable housing litigations.

Meanwhile, in December 2019, the Borough's Council requested the Edgewater Planning Board (the Planning Board) to investigate whether the Eastern Parcel qualified as an area in need of redevelopment in accordance with the LRHL. Shortly thereafter, the Planning Board undertook an investigation and conducted several public hearings between February and June 2020. SJ LLC appeared at those hearings represented by counsel.

At the first hearing, which was conducted on February 11, 2020, SJ LLC objected to the Mayor's and one councilperson's participation in the Planning Board's consideration, alleging that they had conflicts of interest because, although they had not been named as defendants, there had been allegations made about them in the Federal Action. The Planning Board's attorney opined that the Mayor and councilperson did not need to recuse themselves, but the Mayor and councilperson decided to recuse themselves.

During the hearings, the Planning Board heard testimony from several experts, including Paul Grygiel, Kathryn Gregory, and Peter Steck. Grygiel had previously provided consulting services to RR Partners in connection with its planning for the development of the property. Grygiel had been asked to prepare

a report during the settlement negotiations as to whether the Eastern Parcel was an area in need of redevelopment. Ultimately, Grygiel was appointed a "special planner" to the Planning Board, and he presented a report, which he updated at various times. In that regard, Grygiel had initially prepared the report in July 2019 at the request of RR Partners. He thereafter presented the report to the Borough in December 2019 and updated it in March 2020.

According to Grygiel, the Eastern Parcel was formerly used for storage, transfer, and distribution of petroleum products. He explained that the site had been contaminated and, thereafter, remediated. Ultimately, Grygiel opined that there were grounds for finding the Eastern Parcel was an area in need of redevelopment under subsections (b) and (d) of N.J.S.A. 40A:12A-5. Grygiel opined that the buildings that had been removed from the Eastern Parcel had been removed for health and safety reasons and, therefore, the Eastern Parcel qualified as an area in need of redevelopment under N.J.S.A. 40A:12A-5(b). Grygiel also opined that the Eastern Parcel had a deleterious effect on the surrounding residential and commercial properties because it was partially paved with asphalt, had overgrown vegetation, contained abandoned equipment, and was surrounded by a chain link fence topped with barbed wire. Grygiel concluded the "obsolete and deleterious conditions . . . [were] detrimental to the

A-0788-22

safety, health, and welfare" of the community and, therefore, the Eastern Parcel was an area in need of redevelopment under N.J.S.A. 40A:12A-5(d).

The Planning Board also heard testimony from its own planner, Gregory. Gregory submitted a report and testified. She stated that in two Master Plan Re-Examinations in 2012 and 2014, the Planning Board had recommended that the Eastern Parcel be considered for designation as an area in need of redevelopment. Gregory expressed the view that N.J.S.A. 40A:12A-5(b) allowed consideration of buildings that had previously existed on the site, as well as remaining improvements. According to Gregory, because some of the buildings that previously existed had contained asbestos, the Eastern Parcel was deleterious to the public health and safety. Gregory also expressed the view that the structures still on the Eastern Parcel were an attractive nuisance and, therefore, a safety hazard. Gregory agreed with Grygiel's opinion that the Eastern Parcel was an area in need of redevelopment under both subsections (b) and (d) of N.J.S.A. 40A:12A-5.

Counsel for SJ LLC cross-examined both Grygiel and Gregory. SJ LLC also presented its own expert, Steck. Steck prepared and presented a report dated February 10, 2020, and a supplemental planning evaluation report dated May 29, 2020. Steck disagreed with the opinions of Grygiel and Gregory and

testified that the Eastern Parcel did not satisfy the conditions to be an area in need of redevelopment under N.J.S.A. 40A:12A-5(b) or (d). Steck also asserted that Grygiel's report was biased because he had originally prepared the report for RR Partners. Additionally, Steck expressed the view that the Planning Board had been biased by the Settlement Agreement.

On June 10, 2020, the Planning Board also heard testimony from David Puchalski, a Licensed Site Remediation Professional who had been involved in the ongoing monitoring and remediation at the property. Puchalski detailed the remediation that had already occurred on the property and explained that some remediation and monitoring was still needed at the property.

That same day, the Planning Board voted to recommend to the Borough's Council that the Eastern Parcel met the statutory redevelopment criteria. In that regard, four Planning Board members voted in favor of that designation, two abstained, and one voted against the designation. Approximately a month later, on July 8, 2020, the Planning Board memorialized its decision in a written resolution. That resolution provided, in part:

> [A]fter considering all the evidence presented, the testimony provided by all the experts, the factual witness and the public, and the cross-examination and presentation of Objector's counsel, a majority of the Board determined that the testimony of Ms. Gregory and Mr. Grygiel was more credible than Mr. Steck, and

A-0788-22

that the delineated area, known as Block 76, Lots 1 & 5, met the statutory criteria as an area in need of redevelopment in accordance with criteria "b" and "d" of the [LRHL], N.J.S.A. 40A:12A-5[,] as the study area contains a number of improvements that are dilapidated, obsolete, and are detrimental to the safety and welfare of the community, and the study area was formerly developed with industrial buildings whose use was discontinued prior to being removed for health, safety[,] and public welfare reasons and voted to recommend to the Mayor and Council, pursuant to N.J.S.A. 40A:12A-6(b)(5), that the area should be declared an area in need of redevelopment.

[(Citations reformatted).]

Shortly thereafter, the Borough's Council adopted a resolution accepting the Planning Board's recommendation that the Eastern Parcel be designated as an area in need of redevelopment. That same day, the Council introduced an ordinance requesting the Planning Board to review the proposed redevelopment plan as a consistency review required under the LRHL and MLUL.

The Planning Board then held a special public meeting on August 26, 2020, to review the proposed redevelopment plan. At that hearing, the Planning Board heard testimony from its engineer, Dennis Harrington, and its planner, Gregory. According to Gregory, the redevelopment plan furthered several goals of the Master Plan because the redevelopment plan would include a waterfront walkway, maintain easterly views, promote the appropriate level of development

of piers along the Hudson River waterfront, and encourage pedestrian use by constructing sidewalks, byways, and a bridge.

The Planning Board agreed with Gregory's opinions and concluded that the redevelopment plan was substantially consistent with the Borough's Master Plan and Re-Examination reports. The Planning Board then voted to recommend the adoption of the redevelopment plan but also recommended that the Council impose eleven conditions on the redevelopment plan.

At a public hearing on September 29, 2020, the Borough's Council adopted the redevelopment plan, including seven of the Planning Board's recommended conditions (the Redevelopment Plan). The Council did not accept four of the eleven conditions recommended by the Planning Board. The Council then enacted an ordinance adopting the Redevelopment Plan, subject to the seven new conditions, and adopted a resolution naming RR Partners as the redeveloper.

In response to the Borough's actions, SJ LLC filed two actions in lieu of prerogative writs. SJ LLC operates a hotel and spa on a property located at 660 River Road. SJ LLC's property is adjacent to the Eastern and Western Parcels and currently has views of the New York City skyline.

A-0788-22

The first action was filed in December 2019 and thereafter amended. In that action, SJ LLC challenged the Borough's adoption of the Settlement Agreement and sought to void the Settlement Agreement. RR Partners and the Borough of Cliffside Park (Cliffside Park), a municipality located along the western border of the Borough of Edgewater, intervened in that action.

SJ LLC also filed a second complaint in lieu of prerogative writs against the Borough, RR Partners, the Planning Board, and the Borough's Council. In that action, in which SJ LLC also amended its complaint, it sought to challenge and vacate the designation of the Eastern Parcel as an area in need of redevelopment, the Redevelopment Plan, and the designation of RR Partners as the redeveloper.

Cliffside Park also filed a separate complaint in lieu of prerogative writs against the Borough seeking to vacate the designation of the Eastern Parcel as an area in need of redevelopment. The trial court consolidated those three matters.

On August 6, 2021, the trial court denied SJ LLC's and Cliffside Park's request for discovery, reasoning that the requested discovery sought to delve into the mental processes of Borough officials concerning why they signed the

Settlement Agreement. The trial court also denied motions for reconsideration of that decision.

On July 21, 2022, the trial court conducted a bench trial on the consolidated matters. Thereafter, on October 4, 2022, the trial court issued a detailed opinion and judgment dismissing all the complaints in lieu of prerogative writs with prejudice. In its written opinion, the trial court analyzed the various challenges to the actions of the Borough and the Planning Board and determined that there were no grounds for invalidating the Settlement Agreement, the designation of the Eastern Parcel as an area in need of redevelopment, the Redevelopment Plan, or the designation of RR Partners as the redeveloper. Accordingly, the court dismissed all the complaints in lieu of prerogative writs with prejudice.

SJ LLC and Cliffside Park appealed from the judgment. Thereafter, Cliffside Park filed a stipulation of dismissal and withdrew its appeal.

II.

On appeal, SJ LLC presents nine arguments, some with subparts, for our consideration. Three of those arguments challenge the Settlement Agreement. In that regard, SJ LLC contends that the Settlement Agreement did not comply with the LRHL, constituted illegal contract zoning, and violated the holding in

Whispering Woods at Bamm Hollow, Inc. v. Township of Middletown Planning Board, 220 N.J. Super. 161, 172 (Law Div. 1987). Two of the arguments attack the designation and the Redevelopment Plan: SJ LLC asserts that the record does not support the Borough's designation of the Eastern Parcel as an area in need of redevelopment under subsection (b) or (d) of N.J.S.A. 40A:12A-5; and that the trial court erred in finding that there was substantial, credible evidence supporting the Borough's adoption of the Redevelopment Plan. SJ LLC also raises three ethical arguments. It alleges that the Mayor and Council members had conflicts of interest and should not have been involved in the approval of the Settlement Agreement; and that both Grygiel and Gregory violated the Local Government Ethics Law (the Ethics Law), N.J.S.A. 40A:9-22.1 to -22.25, by participating in the review of the Eastern Parcel as an area in need of redevelopment. Finally, SJ LLC argues that the trial court erred in denying its request for discovery.

A.     Our Standard of Review.

The Legislature has delegated to municipalities the power to regulate local land use through the MLUL. In the LRHL, the Legislature also gave municipalities the authority to designate an area as in need of redevelopment,

18

provided the municipality follows the processes and procedures set forth in the LRHL and MLUL.  See N.J.S.A. 40A:12A-5 to -8.

Municipal governing bodies and planning boards "have an obligation to rigorously comply with the statutory criteria for determining whether an area is in need of redevelopment."  62-64 Main St., L.L.C. v. Mayor & Council of Hackensack, 221 N.J. 129, 156 (2015).  "[A]fter the municipal authorities have rendered a decision that an area is in need of redevelopment, that decision is 'invested with a presumption of validity.'"  Id. at 157 (quoting Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 537 (1971)).  The New Jersey Supreme Court has instructed that courts are "to interpret the powers granted to the local planning board liberally and to accept its exercise of the powers so long as a necessarily indulgent judicial eye finds a reasonable basis, [i.e.], substantial evidence, to support the action taken."  Levin, 57 N.J. at 537.  In that regard, "[r]edevelopment designations, like all municipal actions, are vested with a presumption of validity."  ERETC, L.L.C. v. City of Perth Amboy, 381 N.J. Super. 268, 277 (App. Div. 2005) (citing Levin, 57 N.J. at 537).  Accordingly, "judicial review of a redevelopment designation is limited solely to whether the designation is supported by substantial credible evidence."  Ibid.  Moreover, courts "typically recognize that municipal bodies, 'because of their peculiar

knowledge of local conditions, must be allowed wide latitude in the exercise of their delegated discretion.'" Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 196 (App. Div. 2009) (quoting Booth v. Bd. of Adjustment of Rockaway, 50 N.J. 302, 306 (1967)).

We review issues involving the "interpretation of the law and the legal consequences that flow from established facts" de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Therefore, we accord no deference to a trial court or municipal bodies when reviewing legal issues, including statutory interpretation. 388 Route 22 Readington Realty Holdings, LLC v. Township of Readington, 221 N.J. 318, 338 (2015).

B. The Settlement Agreement.

The LRHL governs the process a municipal governing body must follow to designate an area as being in need of redevelopment. See N.J.S.A. 40A:12A-5 to -8; see also Bryant v. City of Atlantic City, 309 N.J. Super. 596, 602-03 (App. Div. 1998) (describing the procedures under the LRHL for designating an area as in need of redevelopment). First, the governing body of a municipality must, by resolution, "authorize the planning board to undertake a preliminary investigation to determine whether the proposed area is a redevelopment area according to the criteria set forth in section 5" of the LRHL. N.J.S.A. 40A:12A-

6(a). Next, in conducting its investigation, the planning board must give public notice and conduct a public hearing. Ibid. An important part of that notice is to inform the public if a municipality will be using its power of eminent domain in a redevelopment area. N.J.S.A. 40A:12A-6(b)(3)(b) to (c). At the public hearing or hearings, the planning board "shall hear all persons who are interested in or would be affected by a determination that the delineated area is a redevelopment area." N.J.S.A. 40A:12A-6(b)(4). Moreover, all "objections to such a determination and evidence in support of those objections, given orally or in writing, shall be received and considered and made part of the public record." Ibid.

After completing its investigation, the planning board "shall" make a recommendation to the municipal governing body as to whether the area, or any part thereof, should be designated for redevelopment. N.J.S.A. 40A:12A-6(b)(5)(a). Thereafter, the municipal governing body "may adopt a resolution determining that the delineated area, or any part thereof, is a redevelopment area." N.J.S.A. 40A:12A-6(b)(5)(b).

If an area is designated, then the municipal governing body is to adopt a redevelopment plan by local ordinance. N.J.S.A. 40A:12A-7. That plan "may include the provision of affordable housing in accordance with the 'Fair Housing

Act.'"   N.J.S.A.  40A:12A-7(b).   A municipality can also contract with a redeveloper.  See N.J.S.A. 40A:12A-8(f); Bryant, 309 N.J. Super. at 603.

The trial court found that the Settlement Agreement expressly required the Eastern Parcel to be reviewed in accordance with the LRHL and MLUL.  The trial court then found that:

> [B]ased upon the extensive record presented, the review of the Eastern Parcel as an area in need of redevelopment and ultimate approval of the Redevelopment Plan (inclusive of designation of [RR Partners] as the redeveloper) was proper, statutorily compliant[,] and [is] clearly supported by substantial credible evidence at every step of the process.

The trial court's findings in that regard are supported by the substantial, credible evidence in the record.  The record establishes that the Borough and the Planning Board followed the procedures required by the LRHL and MLUL.  On December 16, 2019, through a resolution, the Borough's Council directed the Planning Board to investigate whether the Eastern Parcel should be designated as an area in need of redevelopment.  Thereafter, the Planning Board undertook that investigation, gave notice, conducted public hearings, and made a recommendation to designate the Eastern Parcel as an area in need of redevelopment.  The Borough's Council then adopted that recommendation in a resolution.  Finally, the Council requested the Planning Board to review the

proposed redevelopment plan, adopted the Redevelopment Plan through an ordinance, and designated RR Partners as the redeveloper through a resolution.

1.    Whether the Settlement Agreement Complied with the LRHL.

SJ LLC contends that the process was not in compliance with the LRHL because it was pre-determined in the Settlement Agreement. We reject that argument for both factual and legal reasons.

Factually, a review of the Settlement Agreement establishes that it did not mandate a result. While the Settlement Agreement clearly delineated that the Borough would seek to designate the Eastern Parcel as an area in need of redevelopment, it did not mandate the designation. Instead, in several provisions, the Settlement Agreement expressly stated that the process for designating the Eastern Parcel as an area in need of redevelopment had to comply with the LRHL and MLUL. In that regard, the Settlement Agreement stated:

> [T]he settlement herein will, in part, provide [RR Partners] with an opportunity to develop the Eastern Parcel in accordance with this Agreement, conditioned on [RR Partners'] compliance with the criteria and procedure provided in [the MLUL], [the LRHL], Affordable Housing Law, and other law and regulation where applicable.
>
> . . . .

> . . . The parties hereto agree that this Agreement is not in conflict with the MLUL, the LRHL[,] and/or the municipal ordinances of [the Borough] and that nothing herein is or shall be deemed by the Parties to be in derogation thereof or of [the Borough's] and the Planning Board's obligations and duties thereunder.

While the Settlement Agreement included a draft of the Redevelopment Plan, a designation of RR Partners as the redeveloper, and a proposed redevelopment agreement with RR Partners, those agreements and designation were all conditioned on the Borough and the Planning Board following the procedures required by the LRHL. Moreover, the Settlement Agreement recognized that there could be judicial review of whether the contemplated designations satisfied the criteria of the LRHL and MLUL.

SJ LLC argues that in an unpublished opinion, we voided an agreement between a municipality and a developer because it constituted a binding contract for redevelopment entered before following the required procedures to adopt a redevelopment plan. So, SJ LLC contends we should void the Settlement Agreement in this matter. We reject this argument for several reasons. First, the case SJ LLC cites is unpublished and, therefore, not precedential or binding. R. 1:36-3. Second, the facts of that case are distinguishable. In that case, the municipality never passed an ordinance approving a redevelopment plan for the subject property and failed to comply with the procedural requirements of the

LRHL. Additionally, the parties' contract in that case granted the redeveloper the exclusive right to enter a contract with the municipality to redevelop the subject property for three years and prohibited the municipality from negotiating with other developers. Third, and most importantly, we reject SJ LLC's argument that, effectively, any settlement agreement that contemplates a future course of action is void.

Initially, we note that the validity of the Settlement Agreement is not clearly before this court. The court in the Federal Action retained jurisdiction over the Settlement Agreement. Accordingly, the issue before us is whether the Settlement Agreement dictated a result that violated the LRHL or MLUL so that the designation should be vacated. As we have already explained, the Settlement Agreement contemplated a process and bound the Borough to follow that process. The Settlement Agreement did not, however, mandate the result. In other words, a settlement agreement can require parties to follow procedures. The validity of the result will depend on whether those procedures were properly followed and were consistent with the law.

In addition, we reject SJ LLC's blanket argument concerning settlement agreements because it would be inconsistent with well-established law. The New Jersey Supreme Court has repeatedly held that settlement agreements are

A-0788-22

an appropriate way to resolve disputes and generally are to be encouraged and enforced. Gere v. Louis, 209 N.J. 486, 500 (2012); Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008); see also Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 359 (2016). Accordingly, numerous affordable housing cases and land use matters are resolved with agreements setting forth how a municipality and a developer or an advocacy group will proceed to undertake steps to develop affordable housing. See, e.g., Friends of Peapack-Gladstone v. Borough of Peapack-Gladstone Land Use Bd., 407 N.J. Super. 404, 422-23 (App. Div. 2009); E./W. Venture v. Borough of Fort Lee, 286 N.J. Super. 311, 328 (App. Div. 1996). Those settlement agreements, like the Settlement Agreement in this matter, were not illegal because they require future processes. Instead, the validity of those agreements turns on whether the future processes comply with the law. See Friends of Peapack-Gladstone, 407 N.J. Super. at 422-23; E./W. Venture, 286 N.J. Super. at 328 (explaining the requirements for a settlement agreement to be approved by the court in an affordable housing matter).

SJ LLC also cites to N.J.S.A. 40A:12A-8 and argues that a municipality can only begin to implement a redevelopment plan after it has adopted a redevelopment plan. SJ LLC then goes on to argue that because the Settlement

Agreement had already appointed RR Partners as the redeveloper, it violated the LRHL because the Redevelopment Plan was only adopted after the Planning Board conducted its investigation and made its recommendation.

The law is clear that a "municipality must adopt a redevelopment plan before the redevelopment project can be undertaken." Vineland Constr. Co. v. Township of Pennsauken, 395 N.J. Super. 230, 252 (App. Div. 2007). Only after adoption of the redevelopment plan is the municipality "afforded broad statutory authority" to carry out the redevelopment project, including the authority to select a private developer. Ibid. Here, however, the Borough did not begin redevelopment until it had complied with the process for designating the Eastern Parcel as an area in need of redevelopment and adopted the Redevelopment Plan. The Settlement Agreement stated that RR Partners would be the redeveloper provided that the Eastern Parcel was designated as an area in need of redevelopment, and provided that the Borough adopted a redevelopment plan. In other words, while the Settlement Agreement clearly contemplated and required RR Partners to be named the redeveloper, RR Partners only became the redeveloper after the Borough and the Planning Board had complied with the processes, procedures, and criteria of the LRHL and MLUL.

2. Whether the Settlement Agreement Constituted Contract Zoning.

"Zoning is an exercise of the police power to serve the common good and general welfare." V. F. Zahodiakin Eng'g Corp. v. Zoning Bd. of Adjustment of Summit, 8 N.J. 386, 394 (1952). "It is elementary that the legislative function may not be surrendered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts." Ibid. So, a municipality cannot vest in a property owner "by contract a special privilege or exemption to use its premises in violation of the general rule binding upon all other landowners within the zone." Id. at 395. Therefore, when a contract effectively bargains away a municipality's "delegated legislative function," the contract will be voided as contract zoning. Suski v. Mayor & Comm'rs of Beach Haven, 132 N.J. Super. 158, 164 (App. Div. 1975); Midtown Props., Inc. v. Township of Madison, 68 N.J. Super. 197, 207-08 (Law Div. 1961). In short, contract zoning occurs when a municipality makes a contract with a private developer or property owner to suspend the zoning law for the benefit of that developer or property owner. See Livingston Builders, Inc. v. Township of Livingston, 309 N.J. Super. 370, 381-82 (App. Div. 1998); see also Toll Brothers, Inc. v. Township of W. Windsor, 334 N.J. Super. 77, 94 (App. Div. 2000); Warner Co. v. Sutton, 274 N.J. Super. 464, 471 (App. Div. 1994).

SJ LLC argues that the Settlement Agreement should be voided because it was contract zoning. According to SJ LLC, the Settlement Agreement required the Borough to "adopt zoning changes to the Eastern Parcel without public input" in exchange for RR Partners giving the Borough the Western Parcel.

The trial court rejected that argument, reasoning that "the specific terms of the Settlement Agreement, which have been thoroughly reviewed by the court, do not rise to the level of 'contract zoning' as alleged." We agree because the Settlement Agreement specifically required the Borough and the Planning Board to comply with the LRHL and MLUL. As we have already detailed, the Borough did not suspend the zoning laws; rather, the Borough and the Planning Board went through the process of determining whether the Eastern Parcel was an area in need of redevelopment as required by the LRHL and MLUL.

3.    Whether the Settlement Agreement Violated the Holding in Whispering Woods.

In Whispering Woods, the Law Division considered a situation where a developer applied for approval from a municipal planning board, the planning board denied the application, the developer brought an action in lieu of prerogative writs challenging that denial, and ultimately the board and the developer settled the litigation. 220 N.J. Super. at 163-66. The question

presented to the <u>Whispering Woods</u> court was whether that settlement was illegal. <u>Id.</u> at 171-72. The court reasoned:

> It would be unthinkable that a [p]lanning [b]oard, for example, charged with the proper enforcement of local planning and zoning ordinances deny an application only to turn around and negotiate a final, binding approval of it in a modified form to settle the very litigation which ensued upon the denial. If such a settlement could be final and binding that could be the hypothetical result. But it cannot be. The settlement must necessarily (as it was here) be conditioned upon a public hearing on the agreed plan—just as if a new application were being presented to the Board. In other words, any settlement must lead to a further official action by the public body. That action is subject to all of the statutory conditions necessary to vindicate the public interest—notice, public hearing, public vote, written resolution, etc. In addition, it is further subject to the complaint in lieu of prerogative writs.
>
> [<u>Id.</u> at 172 (citation omitted).]

Ultimately, the court in <u>Whispering Woods</u> found that the settlement agreement was not illegal because the agreement between the board and developer was a tentative agreement subject to public presentation, a public hearing, and a public vote. <u>Id.</u> at 173.

    SJ LLC argues that the Settlement Agreement in this matter violated the rationale and rule laid down in <u>Whispering Woods</u> because it circumvented the

obligation for a public settlement hearing. The record and law do not support that argument.

Before adopting a resolution to accept the Settlement Agreement, the Borough's Council held a public meeting and heard public comment on the proposed settlement. Then, the Council adopted the Settlement Agreement by resolution. As already detailed, the Council thereafter authorized the Planning Board to engage in an investigation as to whether the Eastern Parcel was an area in need of redevelopment. That investigation involved further public hearings and more public comment. In short, the Settlement Agreement did not violate the reasoning or rule of Whispering Woods, and the trial court correctly rejected that argument.

C. The Redevelopment Designation.

The LRHL authorizes a municipality to declare property to be an area in need of redevelopment provided that the property meets one of eight criteria. See N.J.S.A. 40A:12A-5(a) to (h). After conducting its investigation, including hearing testimony from three expert witnesses, the Planning Board found that the Eastern Parcel qualified as an area in need of redevelopment under subsections (b) and (d) of N.J.S.A. 40A:12A-5.

1. Subsection (b) of N.J.S.A. 40A:12A-5.

A-0788-22

Subsection (b) of N.J.S.A. 40A:12A-5 states that an area can be considered in need of redevelopment if the following conditions are present:

> The discontinuance of the use of a building or buildings previously used for commercial, retail, shopping malls or plazas, office parks, manufacturing, or industrial purposes; the abandonment of such building or buildings; significant vacancies of such building or buildings for at least two consecutive years; or the same being allowed to fall into so great a state of disrepair as to be untenantable.
>
> [N.J.S.A. 40A:12A-5(b).]

The Planning Board found that the Eastern Parcel qualified as an area in need of redevelopment under subsection (b) because it "was formerly developed with industrial buildings whose use was discontinued prior to being removed for health, safety and public welfare reasons."  The trial court found:

> The bleak condition of the Eastern Parcel, inclusive of its environmental condition due to the petroleum storage and associated industrial use along with the current dilapidated condition of underground piping, containment walls, paved areas, derelict piers and docks (as described in each of the experts' reports and testimony) more than satisfied the threshold burden of proof and clearly provided substantial evidence to support the Planning Board's determination that the Eastern Parcel is an area in need of redevelopment pursuant to both N.J.S.A. 40A-12A-5(b) and [(d)] of the LRHL.

The findings by both the Planning Board and the trial court are supported by substantial, credible evidence in the record and are consistent with the plain language of the LRHL. The evidence before the Planning Board included evidence that Hess had decommissioned the site in 2013 and thereafter demolished various buildings and structures. There was also evidence supporting the trial court's finding that even after most of the buildings had been demolished, the Eastern Parcel still contained underground piping, containment walls, and paved areas.

SJ LLC argues that there were no buildings remaining on the Eastern Parcel and, therefore, the parcel did not qualify for redevelopment under subsection (b). We reject that argument for two reasons. First, as already noted, the trial court found that there were certain remaining structures and infrastructure that had been associated with Hess' use of the property as an oil terminal with buildings. Second, it would be an unduly narrow interpretation of subsection (b) to preclude its application to recently demolished buildings that had posed a public safety hazard. Indeed, to accept that interpretation would encourage property owners not to deal with public safety issues as quickly as possible.

33

Interpreting subsection (b) to apply to recently demolished buildings or structures is also consistent with subsection (c) of N.J.S.A. 40A:12A-5. Subsection (c) applies to "unimproved vacant land," but only if that land "has remained so for a period of ten years prior to adoption of the resolution." N.J.S.A. 40A:12A-5(c).

2.     Subsection (d) of N.J.S.A. 40A:12A-5.

N.J.S.A. 40A:12A-5(d) allows land to be classified as in need of redevelopment if the following condition is present:

> Areas with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land covered, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community.

The record also contains substantial, credible evidence that the Eastern Parcel satisfied the criteria under subsection (d).

Gregory's report to the Planning Board stated that "the site has been in various states of disrepair and environmental contamination" for years, and it had various "improvements," including a pier, underground piping, containment walls, abandoned equipment, and other improvements above and below ground.

Grygiel provided evidence corroborating Gregory's position. After detailing how the Eastern Parcel had previously been developed as a Hess tank farm used for the storage, transfer, and distribution of petroleum products, Grygiel's report concluded:

> Therefore, the obsolete and deleterious conditions of the study area are detrimental to the safety, health, and welfare of the residents, workers, patrons, and visitors of these nearby residential and commercial properties and publicly accessible open spaces.

The Planning Board accepted the reports and testimonies of Grygiel and Gregory that those obsolete and abandoned improvements were detrimental to the safety, health, and welfare of the community. In that regard, we note that a board may accept or reject the testimony of witnesses. See Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 288 (1965). Moreover, there really was no dispute that the Eastern Parcel contained obsolete improvements. "So long as there is substantial evidence in the record, a court may not interfere with or overturn the factual findings of a municipal board." New Brunswick Cellular Tel. Co. v. Twp. of Edison Zoning Bd. of Adjustment, 300 N.J. Super. 456, 465 (Law Div. 1997). In short, the expert testimonies of Gregory and Grygiel support the Planning Board's and Borough's determinations that the Eastern

Parcel was an area in need of redevelopment under subsection (d) of N.J.S.A. 40A:12A-5.

SJ LLC also argues that Grygiel's and Gregory's expert opinions were net opinions. The trial court rejected that argument, finding that both Grygiel's reports and testimony and Gregory's report and testimony provided factual data that supported their conclusions. We agree with the trial court.

"The net opinion rule is a 'prohibition against speculative testimony.'" Ehrlich v. Sorokin, 451 N.J. Super. 119, 134 (App. Div. 2017) (quoting Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013)). Expert testimony "is excluded if it is based merely on unfounded speculation and unquantified possibilities." Townsend v. Pierre, 221 N.J. 36, 55 (2015) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)). An expert's "bare conclusions, unsupported by factual evidence," are inadmissible. Funtown Pier Amusements, Inc. v. Biscayne Ice Cream & Asundries, Inc., 477 N.J. Super. 499, 516 (App. Div. 2024) (quoting Buckelew v. Grossbard, 87 N.J. 512, 524 (1981)).

Our review of the reports and testimonies of Grygiel and Gregory establishes that their opinions were based on specific and detailed facts. In short, the opinions were not net.

We also reject SJ LLC's argument that the Planning Board improperly delegated to Grygiel its duty to make an investigation and did not conduct an independent investigation. It is well-established that a planning board may rely on consultants in conducting its investigation. See Concerned Citizens of Princeton, Inc. v. Mayor & Council of Princeton, 370 N.J. Super. 429, 462-63 (App. Div. 2004) (explaining that "nothing" in the relevant provision of the LRHL "suggests that a planning board may not rely on a redevelopment consultant in conducting its investigation" into whether an area is in need of redevelopment).

D.    The Redevelopment Plan.

SJ LLC asserts that the trial court erred because the record did not contain substantial, credible evidence to support the Borough's adoption of the Redevelopment Plan. The trial court found that the Borough's Council and the Planning Board heard testimony, examined the Redevelopment Plan "section by section," and considered the Redevelopment Plan's consistency with the Borough's Master Plan. Therefore, the trial court found that the adoption of that Redevelopment Plan complied with the LRHL and MLUL. Substantial, credible evidence supports the trial court's findings.

After the Council adopted the Redevelopment Plan, it sent the Redevelopment Plan to the Planning Board for a consistency review. The Planning Board then heard testimony, including testimony from Gregory. Gregory testified that the Borough's Master Plan, as well as the 2012 and 2014 Re-Examination Reports, supported the Redevelopment Plan. Moreover, Gregory testified that the Redevelopment Plan furthered several goals of the Master Plan, including preserving views and access to the Hudson River. Consequently, we discern no grounds for vacating the Redevelopment Plan.

E.    The Alleged Ethical Violations.

The Ethics Law creates a statutory code of ethics that governs when a disqualifying conflict of interest arises for a local government official. So, the Ethics Law and the common law guide courts in evaluating when conflicts arise. See Piscitelli v. Garfield Zoning Bd. of Adjustment, 237 N.J. 333, 349-50 (2019); Grabowsky v. Township of Montclair, 221 N.J. 536, 552 (2015). "The overall objective 'of conflict-of-interest laws is to ensure that public officials provide disinterested service to their communities' and to 'promote confidence in the integrity of governmental operations.'" Piscitelli, 237 N.J. at 349 (quoting Thompson v. City of Atlantic City, 190 N.J. 359, 364 (2007)).

The Ethics Law provides:

No local government officer or employee shall act in his [or her] official capacity in any matter where he [or she], a member of his [or her] immediate family, or a business organization in which he [or she] has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his [or her] objectivity or independence of judgment.

[N.J.S.A. 40A:9-22.5(d).]

See also N.J.S.A. 40A:9-22.2 (setting forth the Legislature's declarations concerning the duties of local government officials).

"We must construe N.J.S.A. 40A:9-22.5(d) to further the Legislature's expressed intent that '[w]henever the public perceives a conflict between the private interests and the public duties of a government officer,' 'the public's confidence in the integrity' of that officer is 'imperiled.'" Piscitelli, 237 N.J. at 351 (alteration in original) (quoting N.J.S.A. 40A:9-22.2(b) to (c)). Disqualification is required when a public official has (1) a direct pecuniary interest; (2) an indirect pecuniary interest; (3) a direct personal interest; or (4) an indirect personal interest. Grabowsky, 221 N.J. at 553 (quoting Wyzykowski v. Rizas, 132 N.J. 509, 525 (1993)).

"'[A] court's determination "whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case."'" Piscitelli, 237 N.J. at 353 (quoting Grabowsky, 221 N.J.

at 554).  "A conflicting interest arises when the public official has an interest not shared in common with the other members of the public."  Wyzykowski, 132 N.J. at 524.  Accordingly, "[t]he ethics rules must be applied with caution, as '[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official.'"  Grabowsky, 221 N.J. at 554 (second alteration in original) (quoting Wyzykowski, 132 N.J. at 523).  "It is essential that municipal offices be filled by individuals who are thoroughly familiar with local communities and concerns."  Ibid.  Consequently, conflict-of-interest rules "do not apply to 'remote' or 'speculative' conflicts because local governments cannot operate effectively if recusals occur based on ascribing to an official a conjured or imagined disqualifying interest."  Piscitelli, 237 N.J. at 353.

SJ LLC argues that there were three conflicts of interest affecting the Settlement Agreement and the designation of the Eastern Parcel as an area in need of redevelopment.  Concerning the Settlement Agreement, SJ LLC contends that the Mayor and Council members had conflicts of interest and should not have approved the Settlement Agreement.  SJ LLC also argues that Gregory had a conflict of interest related to the Settlement Agreement and should not have been involved in the process.  Regarding the designation, SJ

40

LLC alleges that Grygiel had a conflict of interest because he had previously worked for RR Partners.

The trial court considered and rejected each of these alleged conflicts of interest. Concerning the Mayor and the Council members, the trial court found that there was no evidence that they had direct or indirect financial or personal interests that precluded them from approving the Settlement Agreement. In that regard, the trial court reasoned that the allegations against the Mayor and the Council members in the Federal Action did not create a conflict of interest because the allegations were just that—allegations.

We agree with the conclusion reached by the trial court. The current record does not allow us to assess the validity of the allegations made against the Mayor and the Council members in the Federal Action. While the allegations in the Federal Action raised questions, there were no findings of fact on those allegations. Moreover, the federal court allowed the Settlement Agreement to be entered and retained jurisdiction to enforce the Settlement Agreement. Given those facts, we discern no basis to reverse the trial court's determinations concerning the alleged ethical violations by the Mayor and the Council members.

A-0788-22

For similar reasons, we also reject SJ LLC's arguments concerning Gregory. Gregory did not directly participate in the approval of the Settlement Agreement. Therefore, it is not clear that her involvement in the process tainted the Settlement Agreement or the designation. Moreover, as with the allegations against the Mayor and the Council members, the allegations against Gregory in the Federal Action were never proven.

Finally, we discern no basis for vacating the redevelopment designation because of Grygiel's participation. The record is clear that Grygiel disclosed his prior affiliation with RR Partners during the investigation of the redevelopment designation. Moreover, Grygiel was appointed as a "special planner" to the Planning Board. Therefore, it is not even clear that he is governed by the Ethics Law, which applies to a "local government officer or employee." N.J.S.A. 40A:9-22.5(h). Just as importantly, it was the Planning Board that was charged with investigating whether the Eastern Parcel met the criteria for the redevelopment designation. The Planning Board had the ability to evaluate Grygiel's reports and testimony, and we discern no basis to vacate the designation because of Grygiel's involvement.

F.    The Request for Discovery.

Discovery determinations are within the discretion of the trial court. Brugaletta v. Garcia, 234 N.J. 225, 240 (2018). Appellate courts use an abuse of discretion standard in evaluating trial courts' rulings on discovery issues. Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). SJ LLC argues that it was entitled to discovery to seek information concerning the interests of various Council members and whether they had personal interests that created conflicts when they signed the Settlement Agreement.

We discern no abuse of discretion in the trial court's decision to deny SJ LLC's request for discovery. SJ LLC filed complaints in lieu of prerogative writs, and such actions are generally limited to the record created before a municipal board or council. See Willoughby v. Plan. Bd. of Deptford, 306 N.J. Super. 266, 273-74 (App. Div. 1997) (citing Kramer, 45 N.J. at 289); see also R. 4:69-4 (governing actions in lieu of prerogative writs and providing that "[t]he scope and time to complete discovery . . . will be determined at the case management conference and memorialized in the case management order"). Furthermore, because SJ LLC did not demonstrate that the discovery it was seeking was relevant, granting its request would have simply led to further delays.

## III.

In summary, we have considered and rejected the numerous arguments presented by SJ LLC.  We believe we have addressed all the arguments raised, but to the extent that there are some arguments we did not address, we deem those arguments to be without sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).  We acknowledge that this has been a long process involving applications for variances from zoning ordinances, contentious litigation, and affordable housing litigation.  Our review and conclusions are based on the extensive record presented on this appeal.  Having reviewed the record and governing law, we discern no basis to reverse the trial court's judgment dismissing SJ LLC's complaints in lieu of prerogative writs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0788-22